**Jack SCHENIN d/b/a I. J. Schenin Company, Plaintiff,**

**v.**

**MICRO COPPER CORP., Vanura Uranium, Inc., William T. Swift and E. R. Cook, Jr., Defendants.**

**No. 66 Civ. 4466.**

United States District Court
S. D. New York.

July 12, 1967.

Edward Nathan, New York City, for plaintiff, Edward Nathan, Matthew Anenberg, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants, Micro Copper Corp., William T. Swift and E. R. Cook, Jr., Robert D. Krumme, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Defendants Swift, Cook and Micro Copper Corporation [hereinafter "Micro"] have moved for an order:

"(a) Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing the complaint on the ground that the Court lacks jurisdiction over the person, and

(b) Pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure granting judgment to William T. Swift and E. R. Cook, Jr. on the ground that the complaint fails to state a claim upon which relief can be granted."

In the event that their motion for dismissal and/or summary judgment is denied, defendants have asked for a protective order under Rule 30(b) in respect to the depositions of Cook and Micro by Cook, noticed for New York City.

Having concluded that there is an absence of jurisdiction over the persons of the defendants, the Court shall not reach the other issues raised. Arrowsmith v. United Press International, 320 F.2d 219, 221, 6 A.L.R.3d 1072 (2d Cir. 1963).

The present action was commenced in the Supreme Court of the State of New York by service of two copies of the summons and complaint upon defendant

Ellis R. Cook, Jr. at his office in Moab, Utah. The proof of service indicates that one copy was directed to defendant Cook, individually, and the other to defendant Micro. Because Cook was the Secretary of Micro at the time of service, there is no question that service on Micro was proper if the corporation was amenable to suit in New York.

Cook and Micro removed the action to this Court on the basis of diversity of citizenship. Thereafter, defendant William T. Swift was served with a summons and complaint delivered to his wife at their home in Stratford, Connecticut. The fourth defendant Vanura Uranium, Inc. [hereinafter "Vanura"] has not been separately served in this action. Moreover, it is stated in the affidavits of Cook and Swift, and conceded in plaintiff's memorandum of law (p. 18), that Vanura—a Nevada corporation never authorized to do business in New York—was dissolved in October, 1958.

Plaintiff nevertheless insists that Vanura is before this Court (plaintiff's memorandum of law p. 18), erroneously relying upon § 1006 of the New York Business Corporation Law, McKinney's Consol.Laws, c. 4 [hereinafter BCL] relating to the survival of remedies against dissolved domestic corporations. See BCL § 102(a) (4). In view of the fact that Vanura is not a party to the present motions, it is unnecessary to elucidate upon the Court's conclusion that Vanura has not and could not be brought before this Court except through a receiver of its assets in New York appointed by a New York court, or perhaps through a trustee or receiver appointed by a Nevada court. See BCL § 1218; Nevada Revised Statutes §§ 78.-585–78.610.

A brief chronology of the pertinent facts is helpful to an understanding of the jurisdictional question.

Vanura was incorporated in Nevada in February, 1955, for the purpose of engaging in the mining business. In exchange for fifty unpatented mining claims in Colorado, the corporation issued a total of 3,000,000 shares of common stock to Swift and Cook. By agreement dated May 31, 1955, Vanura engaged plaintiff Jack Schenin, doing business as I. J. Schenin Company, to underwrite a public offering of an additional three million shares of Vanura at a price of 10 cents per share. A modification and clarification agreement was executed on August 15, 1955.

In essence, the agreements provided that Schenin would undertake to sell the issue on a best-efforts basis for a commission of twenty-five per cent of the price to the public. In addition, the underwriter received an option to purchase up to 1,000,000 shares of Vanura from the corporation at a price of one mill per share on the basis of one share for each three shares sold to the public. The earlier agreement recited that the one million shares had been previously donated to the corporation by Cook and Swift for this purpose.

Schenin commenced selling shares of Vanura to the public. By December, 1956, almost the entire issue had been sold. On December 7, 1956, the Securities and Exchange Commission temporarily suspended Vanura's exemption from the registration requirements of the Securities Act of 1933. In effect, this order barred further issuance of Vanura stock. The adverse parties to the present action blame one another for the suspension, but apparently no interested party ever filed a request for a hearing before the SEC.

Thereafter, by check dated February 20, 1957, Schenin tendered one thousand dollars to Vanura in attempted exercise of his option to purchase one million shares from the corporation. The check was accepted by Vanura, but Schenin's demand for transfer and delivery of the shares was not honored by the corporation. In July, 1957, pursuant to Vanura's request, its transfer agent mailed, from its office in New Jersey to the corporation in Utah, a certificate for one million shares registered in the corporate name. The transfer agent is a New Jersey corporation; and the affidavit of its employee Cooney states that all transfers

of Vanura stock were made on the books of Vanura by its transfer agent at its offices in New Jersey.

The final pertinent events occurred in October, 1958, when Vanura sold all of its assets to Micro in exchange for 247,227 shares of Micro common stock. Vanura's stockholders received the Micro shares as a liquidating dividend at the rate of one share of Micro for each twenty shares of Vanura; and Vanura was formally dissolved. The one million shares, still registered in the name of Vanura, were disregarded in the acquisition of assets by Micro and in the subsequent dissolution of Vanura.

We come now to the question posed. Defendants' claims of lack of in personam jurisdiction challenge the power of the Court to proceed with an adjudication of the rights asserted. Arrowsmith v. United Press International, supra. The plaintiff is thereby called upon to establish at least "threshold jurisdiction." United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir.), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y. 1966). It is agreed that, on the present record, jurisdiction based on out-of-state service of process is authorized here only if the claim falls within New York CPLR § 302, the State's general long-arm statute.

I. *Defendant Micro Copper Corporation*

■ Plaintiff concedes that defendant Micro—a Delaware corporation with its principal place of business in Utah— is not doing business in New York and has not done so in the past (CPLR § 301), and does not transact business here (CPLR § 302). The sole basis for in personam jurisdiction as asserted by plaintiff derives from Micro's purchase of the assets of Vanura. The contention seems to be that Vanura would have been amenable to suit in New York under CPLR § 302, and Micro being a "successor-in-interest" thereby became subject to our jurisdiction.

■■ Although the defendants vigorously dispute plaintiff's minor premise that Vanura would have been subject to suit in New York, we can assume for present purposes, and without deciding the question, that CPLR § 302 provides a basis for jurisdiction over the person of Vanura. The insurmountable hurdle in plaintiff's path is the sound distinction in law between a statutory merger and an acquisition of assets. While the plaintiff has sought through ambiguous rhetoric and disproven implication to obscure the factual and legal character of the transaction between Micro and Vanura, he has failed to adduce a single shred of probative evidence that the transaction was anything but an acquisition of assets as sworn to by the individual defendants and as his own exhibit (plaintiff's exhibit 5) declares. Surely if a statutory merger had been effected, public records of the incorporating states of Vanura and Micro would show that fact. Moreover, in the absence of any allegation or proof that the transaction was part of a scheme to avoid jurisdiction, we are obliged to recognize the transaction in the form adopted by the parties thereto.

There having been no statutory merger between Micro and Vanura, any claim against Micro on an alleged obligation of Vanura must rest on an assumption of Vanura's liabilities by Micro. Whether or not plaintiff could sue Micro directly—for example, on a third party beneficiary theory—would depend on the applicable law, but he could sue Micro only where it could be found. Plaintiff's novel approach to the jurisdictional issue rests, in effect, on an untenable theory of involuntary, retroactive attribution. There exists no basis in law or reason to impute to Micro, for jurisdictional purposes, activities of Vanura in New York, such as they may have been. Madden v. Koehring Co., N.Y.L.J., March 8, 1965, p. 18, col. 8 (Sup.Ct. Nassau Cty.1964) relied on by the plaintiff is wholly inapposite. There, *inter alia*, the acquisition of assets, itself, occurred in New York.

## II. *The Individual Defendants*

The question of jurisdiction over the person of the individual defendants presents a more difficult problem. There are sharply contested issues of fact and law concerning Vanura's amenability to suit in New York based on the transaction of business within the state under CPLR § 302(a) 1. For the reasons previously stated, however, the Court does not recognize Vanura as a party to the instant litigation. It is therefore unnecessary to reach those issues except as they may bear upon the amenability to suit in New York of the individual defendants.

As the recited facts indicate, Swift and Cook were the sole stockholders of Vanura at the time the underwriting agreements were executed. They also were president and vice-president of the corporation, respectively, as well as directors. Both resided in Utah, Vanura's principal place of business. Swift now lives in Connecticut, while Cook has continued to reside in Utah, serving as Secretary to Micro. Neither individual "owns, uses or possesses any real property situated" within New York. CPLR § 302(a) 4.

Relying upon several alternative theories, plaintiff nevertheless maintains that Swift and Cook may be brought before this Court on the basis of out-of-state service of process. First, he asserts that the individual defendants are trustees of the dissolved corporation under Nevada law. As such, according to the plaintiff, they are "successors to the obligations of Vanura," and therefore also "successors to Vanura's business activities and tortious acts occurring in New York." (Plaintiff's memorandum of law p. 19). Second, plaintiff contends that Swift and Cook have "transact[ed] business within the state" on their own behalf, in addition to their activities on behalf of Vanura. CPLR § 302(a) 1. Finally, he argues that the individuals participated in and benefited from Vanura's alleged conversion of the one million shares, thereby apparently committing a "tortious act within the state." CPLR § 302(a) 2.

### A. *Trustee Theory*

Plaintiff asserts that under Nevada law, the directors of a dissolved corporation become trustees thereof for the purpose of defending suits, and are jointly and severally liable for debts incurred by the corporation before dissolution. This is an incomplete and inaccurate representation of Nevada law. Assuming that Swift and Cook were directors of Vanura at the time of its dissolution (which was neither alleged nor proven), it is true that they would have been trustees of the corporation for the purpose of winding up its affairs. Nevada Revised Statutes § 78.590. After final distribution, however, it would seem that their trusteeship could be continued only upon application by a creditor or stockholder to the Nevada district court. Nevada Revised Statutes §§ 78.595, 78.600, 78.605, 78.610. Moreover, their liability as trustees, while joint and several, would extend only "to the amounts of the moneys and property of the corporation which shall come into their hands and possession." Nevada Revised Statutes § 78.595.

█ Although New York permits service of process upon the secretary of state to commence a suit against an *authorized* foreign corporation even after dissolution (BCL § 1311) and provides for the appointment of a receiver to liquidate *assets in New York* of any dissolved foreign corporation (BCL § 1218), there is no statutory authority for holding the corporation's former officers or directors personally liable for claims against the corporation. In such situations, New York courts look to the law of the state of incorporation. See, e. g., Lehrich v. Sixth Avenue Bancorporation, 251 App.Div. 391, 296 N.Y.S. 358 (1st Dep't 1937). Cf. Matter of National Surety Co., 283 N.Y. 68, 27 N.E.2d 505 (1940), cert. denied sub nom., Laughlin v. Pink, 311 U.S. 707, 61 S.Ct. 175, 85 L.Ed. 459 (1940). Here, that law provides no authority for a suit against its former directors, in a foreign forum,

after final distribution, except perhaps upon prior application to the Nevada district court. Nevada Revised Statutes § 78.605.

### B. *Transacted business theory*

Plaintiff concedes that, if Swift and Cook had entered New York "solely for the purpose of transacting business on behalf of Vanura," the Court would lack jurisdiction over their persons. Boas & Associates v. Vernier, 22 A.D.2d 561, 257 N.Y.S.2d 487 (1st Dep't 1965); Unicon Management Corp. v. Koppers Co., 250 F.Supp. 850 (S.D.N.Y.1966). It is contended, however, that their activities in New York were also for their own "personal benefit and profit," and they thereby subjected themselves to our jurisdiction. Recognizing that the Court would not pierce the corporate veil merely upon a showing that Swift and Cook were Vanura's sole stockholders, plaintiff blandly asserts that Swift—in executing the underwriting agreement on behalf of Vanura—intended to bind himself personally as well as Cook.

That this contention is wholly lacking in merit may be seen from the face of the written instruments. Both documents are in the form of letter agreements addressed to "I. J. Schenin Co." The agreement of May 31, 1955 is signed:

VANURA URANIUM, INC.

By /s/ William T. Swift

The agreement of August 15, 1955 is signed:

VANURA URANIUM, INC.

By /s/ William T. Swift

WILLIAM T. SWIFT
—President

The prefatory clause of the earlier agreement designates the addressee as "the 'Underwriter' and the undersigned as the 'Corporation'." The body of each agreement sets forth the rights and obligations of the "Underwriter" and the "Corporation." A perusal of these two documents demonstrates conclusively that Schenin and Vanura were the sole parties to the underwriting arrangement.

Plaintiff's claim that the individual defendants intended to be bound personally by Vanura's signature is based on a single sentence of the earlier agreement which reads as follows:

"The Corporation agrees to sell 1,000,000 shares, heretofore donated to it by the controlling stockholders for such purpose, to the Underwriter * * *."

On its face, this sentence clearly embodies a promise by Vanura, not the individual defendants. The reference to the "controlling stockholders" is in the form of a recital of an historical fact (an historical fact not disputed here by the plaintiff) which cannot be said to manifest any intention to bind the stockholders individually.

Mencher v. Weiss, 306 N.Y. 1, 114 N.E.2d 177 (1953), relied on by plaintiff, is wholly distinguishable on its facts. Indeed, the written instrument in that case so clearly evidenced an intention to bind the signatory individually that parol evidence probative of a contrary intent was held inadmissible.

The Court has taken the pains to explain in detail this aspect of plaintiff's jurisdictional claim only to demonstrate how futile further inquiry would be. The place of execution of these agreements and the extent of Vanura's activities in New York in implementation thereof are disputed matters, resolution of which could not alter the critical and controlling fact that Swift and Cook were not parties to the underwriting agreement. Plaintiff has not only failed to meet his burden of proof on this issue; he has failed even to adduce any evidentiary facts which would raise a triable issue. Cf. Unicon Management Corp. v. Koppers Co., supra.

Likewise, that the individual defendants are alleged to have engaged in apparently fruitless negotiations with the plaintiff on their own behalf in New York subsequent to the execution of the May and August agreements could not affect the question of jurisdiction raised here. Plaintiff concedes that these negotiations were "unrelated to the

agreement which forms the basis for this suit \* \* \*." (Schenin affidavit pp. 4–5). Because the cause of action asserted here does not arise out of business transacted in New York by the individual defendants on their own behalf, they are not subject to the reach of subdivision (a) 1 of CPLR § 302.

## C. *Tortious act theory*

In response to that branch of defendants' motions praying for dismissal of the suit as against the individual defendants for failure to state à claim, plaintiff contends that the facts alleged in the complaint constitute a valid claim against Swift and Cook for conversion, alternative to the breach of contract claim. Although plaintiff has not specifically argued the point, presumably he is relying on this tort theory for jurisdictional purposes as well. (See plaintiff's memorandum of law, p. 21.)

There is reason to doubt whether the restatement in tort of a claim resting on a breach of contract can bring that claim within CPLR § 302(a) 2. See Old Westbury Golf & Country Club, Inc. v. Mitchell, 44 Misc. 2d 687, 254 N.Y.S.2d 679 (Sup.Ct. Nassau Cty. 1964), aff'd 24 A.D.2d 636, 262 N.Y.S.2d 438 (2d Dep't 1965), aff'd 18 N.Y.2d 670, 273 N.Y.S.2d 418, 219 N.E.2d 868 (1966). Insofar as the tort theory might rest upon conduct of the individuals as actual parties to the underwriting arrangement, the Court specifically rejects the contention for the same reasons supporting dismissal of the contract claim against them. On the other hand, under exceptional circumstances, individuals occasionally have been held personally accountable in tort to third parties for action taken as corporate directors. See, e. g., Mendelson v. Boettger, 257 App.Div. 167, 12 N.Y.S.2d 671 (2d Dep't 1939), aff'd 281 N.Y. 747, 23 N.E.2d 554 (1939); Melnick v. Sable, 11 A.D.2d 1075, 206 N.Y.S.2d 825 (2d Dep't 1960); In re Riley, 266 App.Div. 160, 43 N.Y.S.2d 753 (4th Dep't 1943), app. dismissed 294 N.Y. 825, 2 N.E.2d 245 (1945). Whether the plaintiff's ultimate proof on this claim could possibly measure up to the high standard required to pierce the corporate veil is a matter which we need not decide. For whatever claim for relief sounding in tort might be fashioned from the proof, no evidence has been adduced which would even suggest that Swift and Cook committed a "tortious act *within* the state" within the meaning of subdivision (a) 2 of CPLR § 302. (Emphasis added.) In regard to the alleged conversion of the 1,000,000 shares, it appears certain beyond peradventure of doubt that all arguably relevant conduct occurred outside this state. To support even "threshold jurisdiction" over their persons justifying further inquiry, plaintiff would have had to bring forward some evidence suggesting that Swift and Cook had entered into a scheme to defraud plaintiff, predating the SEC suspension, which was implemented by acts in New York. Cf. United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir.), cert. denied 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). The individual defendants' failure to deliver the stock to the plaintiff in New York, if they bore any such personal duty, would not constitute a "tortious act within the state." CPLR § 302(a) 2. See Platt Corp. v. Platt, 17 N.Y.2d 234, 270 N.Y. S.2d 408, 217 N.E.2d 134 (1966). But cf. G. Benedict Corp. v. Epstein, 47 Misc. 2d 316, 262 N.Y.S.2d 726 (Sup.Ct.1965) (failure to pay in New York held to be *transaction of business* under CPLR § 302(a) 1).

Plaintiff has not argued the possible applicability of CPLR § 302(a) 3, conferring jurisdiction in certain limited circumstances for torts committed outside the state. However, on the present record, necessary elements under that subdivision have not been satisfied.

Having concluded that no statute, rule or decision authorizes the assertion of jurisdiction over the persons of the moving defendants, the Court does not find it necessary to reach the constitutional issues posed. See, e. g., International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95

(1945); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Motions to dismiss for lack of in personam jurisdiction granted.

So ordered.