16-3560-cv
*U.S. Bank Nat'l Ass'n v. Bank of America N.A.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2017

(Argued: November 8, 2017    Decided: February 15, 2019)

Docket No. 16-3560-cv

U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR (WELLS FARGO BANK, NA), AS TRUSTEE (REGISTERED HOLDERS OF CITIGROUP COMMERCIAL MORTGAGE TRUST 2007-C6, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-C6), ACTING BY AND THROUGH SPECIAL SERVICER CWCAPITAL ASSET MANAGEMENT LLC,

*Plaintiff-Appellant,*

*v.*

BANK OF AMERICA N.A.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

LEVAL, LIVINGSTON, and CHIN, *Circuit Judges*.

Appeal by Plaintiff U.S. Bank National Association from orders of the United States District Court for the Southern District of New York (Paul G.

Gardephe, *J.*) denying Plaintiff's motion to retransfer the suit to the United States District Court for the Southern District of Indiana, where it was instituted, and granting judgment on the pleadings in favor of Defendant Bank of America N.A., by reason of untimeliness under the laws of New York. The district court in Indiana had transferred the case to New York under 28 U.S.C. § 1631 based on its conclusion that the defendant was not subject to personal jurisdiction in Indiana. Although we disagree with that conclusion (and therefore with the propriety of the transfer under § 1631), we affirm the New York district court's denial of the motion to retransfer to Indiana, treat the original transfer as one made under 28 U.S.C. § 1404(a) (rather than § 1631), and vacate the judgment that the suit was untimely under the laws of New York. The judgment is VACATED and the case is REMANDED for further proceedings.

Judge CHIN concurs in a separate opinion.

—————————————

COLLEEN M. MALLON (Gregory A. Cross, *on the brief*), Venable LLP, Baltimore, Maryland, *for Plaintiff-Appellant*.

ELIZABETH P. PAPEZ (Luke A. Connelly, Stephanie A. Maloney, *on the brief*), Winston & Strawn LLP, Washington, D.C. and New York, New York, *for Defendant-Appellee*.

—————————————

LEVAL, *Circuit Judge*:

In this suit for breach of contract, Plaintiff U.S. Bank National Association appeals from orders of the United States District Court for the Southern District of New York (Paul G. Gardephe, *J.*) denying its motion to retransfer the suit to the United States District Court for the Southern District of Indiana, where it was

instituted, and granting judgment on the pleadings in favor of Defendant Bank of America N.A., by reason of the untimeliness of the suit under New York's statute of limitations. The district court in Indiana had transferred the case to New York under 28 U.S.C. § 1631, based on its conclusion that the suit could not be brought in Indiana because the Defendant (a nationally chartered bank and citizen of North Carolina) was not subject to personal jurisdiction in Indiana.

We disagree with the Indiana district court's conclusion that the Defendant was not subject to the jurisdiction of the Indiana court, and therefore we necessarily conclude that the Indiana court's transfer to New York was not authorized by § 1631. We nonetheless affirm the New York district court's denial of Plaintiff's motion to retransfer to Indiana, treat the original transfer as one made under 28 U.S.C. § 1404(a) (rather than § 1631), and vacate the judgment of dismissal rendered on the ground that the suit was untimely under the laws of New York.

- 3 -

## BACKGROUND

**I.**     *The Mortgage Loan Purchase Agreement*

In 2007, Defendant Bank of America's predecessor, LaSalle Bank N.A.,[1] entered into a Mortgage Loan Purchase Agreement (the "MLPA"), for the sale of a portfolio (of approximately 100 commercial mortgage loans) to an entity[2] acting for the benefit of an investment trust (the "Trust"), for which Plaintiff U.S. Bank (a nationally chartered bank and citizen of Ohio) serves as Trustee. The MLPA was supplemented by a Pooling and Servicing Agreement (the "PSA"), which provided that the purchaser would deposit the loans into the Trust and assign all of its rights under the MLPA to the Trust.

In the MLPA, the seller made representations and warranties regarding the loans.  These included Representation No. 8 (set forth in the margin),[3] which

---

[1] LaSalle Bank later merged with Defendant Bank of America.

[2] Citigroup Commercial Mortgage Securities, Inc. was the purchaser under the MLPA for the benefit of the Trust.

[3] "Each related Mortgage is a valid and enforceable first lien on the related Mortgaged Property *subject only to . . .* [exceptions not relevant here] and the following title exceptions . . . (b) covenants, conditions and *restrictions*, rights of way, easements and other matters of public record, *none of which,* individually or in the aggregate, *materially and adversely interferes with the current use of the Mortgaged Property or the security intended to be provided by such Mortgage or with the Mortgagor's ability to pay its obligations under the Mortgage Loan* when they become due *or materially and adversely affects the value of the Mortgaged Property . . . .*" App. 93. (emphasis added)

effectively represented the absence of any restrictions that would interfere with

the mortgagor's ability to pay its obligations under the mortgage loan or would

materially and adversely affect the value of the mortgaged property.

The MLPA prescribes specific remedies available to the mortgagee in the

event of a "Document Defect or a Breach" of a representation. App. 79.  Pursuant

to Section 3(c), the seller of the loan portfolio (Defendant's predecessor)

undertook a commitment that, upon receipt of notice of a Document Defect or

Breach, it would:

> cure such Document Defect or Breach . . . in all material
> respects, or, if such Document Defect or Breach . . .
> cannot be cured . . . , (i) repurchase the affected
> Mortgage Loan at the applicable Purchase Price . . . , or
> (ii) substitute a Qualified Substitute Mortgage Loan for
> such affected Mortgage Loan . . . .

App. 79.

The PSA, in Section 2.03, similarly provides that, after receiving timely

notice of a Document Defect or Breach, the seller shall:

> (i) cure such Document Defect or Breach, as the case
> may be, in accordance with Section 3 of the applicable
> [MLPA], (ii) repurchase the affected Trust Mortgage
> Loan in accordance with Section 3 of the related
> [MLPA], or (iii) within two (2) years of the Closing

Date, substitute a Qualified Substitute Mortgage Loan for such affected Trust Mortgage Loan . . . .

App. 247.

**II.    *The Indiana Loan***

One of the items in the portfolio sold pursuant to the MLPA, was a $9 million loan (the "Loan"), which is the subject of this litigation, made in 2007 to Women's Physicians Group, LLC.  Repayment of the Loan was secured in part by a mortgage on a two-story commercial building (the "Property") (then owned by the borrower/mortgagor Women's Physicians Group), which was located on a hospital campus in Indiana. Women's Physicians Group had purchased the Property from Galen Hospital Corporation (the "Hospital") pursuant to a special warranty deed. The deed includes two title exceptions that run with the property: (1) a use restriction, which, absent the consent of the Hospital, prohibits use of the Property otherwise than as an ambulatory surgery center and medical offices, and (2) a right of first refusal in favor of the Hospital for any sale, transfer, or assignment.

In 2012, Women's Physicians Group lost the major tenant for the Property, was unable to secure a new tenant that would use the Property in a manner that conformed to the use restriction, and consequently defaulted on the Loan. On

December 13, 2012, the Trust, which had acquired the Loan pursuant to the MLPA, commenced a foreclosure action in Indiana state court against Women's Physicians Group. The foreclosure court appointed a receiver, who similarly failed to secure either a tenant or a waiver or modification of the deed restrictions.

On October 18, 2013, Plaintiff-Trustee notified Bank of America that it had violated MLPA Representation No. 8 and demanded that Bank of America cure the violation or repurchase the Loan, as provided in the MLPA. Bank of America did not do so.

**III.** *The Proceedings Below*

On September 12, 2014, Plaintiff, as Trustee, brought this action against Bank of America in the Indiana district court, alleging breach of Representation No. 8. Bank of America moved to dismiss the suit, or alternatively to transfer it to the Southern District of New York, asserting that it was not subject to personal jurisdiction in Indiana. The Indiana district court ruled that Bank of America was not subject to personal jurisdiction in Indiana. The Indiana district court transferred the case to the New York district court pursuant to 28 U.S.C. § 1631, which authorizes a federal district court, on the basis of a "want of jurisdiction, . .

. if it is in the interest of justice, [to] transfer such action . . . to any other such court . . . in which the action . . . could have been brought."[4] It is undisputed that venue and jurisdiction are proper in the Southern District of New York.

Following the transfer, Plaintiff moved in the New York district court to retransfer the case to the Indiana district court, arguing that, contrary to the Indiana district court's ruling, Bank of America was subject to the court's personal jurisdiction in Indiana on several different bases. The New York district court denied the motion. In the meantime, Bank of America had moved in the New York district court for judgment on the pleadings. The district court granted that motion, concluding that Plaintiff's claim for breach of contract was time-barred under New York's six-year statute of limitations. The court entered judgment in favor of Defendant Bank of America on September 22, 2016. This appeal followed.

---

[4] 28 U.S.C. § 1631 provides for transfers to cure want of jurisdiction, as follows:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

**DISCUSSION**

Plaintiff raises a number of arguments on appeal, including that the Indiana district court erred in finding that Bank of America was not subject to its jurisdiction, that the New York district court erred in refusing to retransfer the case to Indiana, and that the New York district court accordingly should not have entered judgment in favor of Defendant. We address these issues in turn.

**I.**   ***Was Defendant Subject to the Personal Jurisdiction of the Indiana District Court?***

Plaintiff contends that, contrary to the Indiana district court's ruling, Bank of America was subject to personal jurisdiction in Indiana, both on the basis of general jurisdiction (because of either its waiver or its extensive activities in Indiana) and specific jurisdiction (because of the contractual representations it undertook concerning real property in Indiana and the commitments it undertook in the terms of the MLPA to perform acts in Indiana). We are persuaded that Bank of America made itself subject to Indiana personal jurisdiction *in this case.* Accordingly, we have no need to consider Plaintiff's less persuasive arguments that Bank of America was also subject to general Indiana jurisdiction.

To determine personal jurisdiction, a federal district court applies the long-arm statute of the state in which it sits. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Indiana's long-arm statute authorizes courts to exercise jurisdiction on any basis permitted by the U.S. Constitution. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("Under Indiana's long-arm statute, Indiana state courts may exercise personal jurisdiction on a number of prescribed bases, as well as 'on any basis not inconsistent with the Constitution of this state or the United States.'") (quoting Ind. R. Trial P. 4.4(A)). To comport with due process, a forum state may exercise jurisdiction over an out-of-state corporate defendant only if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Specific jurisdiction over an out-of-state defendant "is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

When deciding whether personal jurisdiction over a defendant exists in a district court that falls outside this Circuit, we need not predict how our sister circuit would decide the question, "since we are at liberty to decide for ourselves what the Due Process Clause requires to sustain personal jurisdiction." *Chew v. Dietrich*, 143 F.3d 24, 30 (2d Cir. 1998); *see also SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 180-81 (2d Cir. 2000) (applying this circuit's case law to decide whether Louisiana could exercise personal jurisdiction over a defendant). Although we consider the decisions of our sister circuits, "we are permitted -- indeed, required -- to reach our own conclusions" on issues of federal law. *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006); *see also Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 173-74 (2d Cir. 2012) ("[O]ur court is not bound by the holdings -- much less the dicta -- of other federal courts of appeal."). But we "defer conclusively" to another circuit's decision when it addresses a question of state law from a state within that circuit. *Desiano*, 467 F.3d at 90.

**1.**  *Applicable Law of Specific Personal Jurisdiction*

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. *See Bristol-Myers Squibb Co. v. Superior*

*Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1785-86 (2017). "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Id.* at 1785 (quoting *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality opinion)). "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *Id.* at 1786 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "Finally, the exercise of jurisdiction must be reasonable under the circumstances." *Id.* (citing *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113-114 (1987)).

At the first step, the minimum contacts inquiry is "satisfied if the defendant has 'purposefully directed' his activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *see also Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) ("[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.").

To meet the minimum contacts requirement, "the defendant's suit-related conduct must create a substantial connection with the forum State" -- that is, the "defendant *[it]self*" must create those contacts, and those contacts must be with the "forum State itself," not simply with persons who reside there. *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation omitted). Thus, although a defendant's contacts with the forum state may be "intertwined with [its] transactions or interactions with the plaintiff or other parties . . .[,] a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123; *see also Bristol-Myers Squibb*, 137 S. Ct. at 1783 (2017) (same). It is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016) (quoting *Walden*, 134 S. Ct. at 1123) (internal quotation marks omitted).

Nor is it sufficient for a plaintiff to show simply that a defendant's actions caused an "effect" in the forum state where the defendant has not "expressly aimed its conduct at the forum." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2013). And "mere injury to a forum resident" is

insufficient. *Walden*, 134 S. Ct. at 1125; *see also SongByrd*, 206 F.3d at 181 (rejecting specific personal jurisdiction over a defendant even if defendant's action could be viewed as a "but for" cause of relevant events in forum state); *accord Noboa v. Barceló Corporación Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016) ("[T]he pertinent question is whether the defendant has links to the jurisdiction in which the suit was filed, not whether the plaintiff has such links -- or whether the loss flowed through a causal chain from the plaintiff's contacts with the jurisdiction of suit."). Similarly, "the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).

Where the underlying dispute involves a contract, we use a "highly realistic" approach and evaluate factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

At the second step, we must be satisfied that "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* at 472 (quoting *Helicopteros*, 466 U.S. at 414). We have found that a claim arises out of forum contacts when defendant's allegedly culpable conduct involves at least in part

- 14 -

financial transactions that touch the forum. *Licci*, 732 F.3d at 169-70. And finally, for the third step, once it is established that the defendant has minimum contacts with the forum and the cause of action relates to or arises from those contacts, "a court considers those contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Charles Schwab*, 883 F.3d at 82 (quoting *Licci*, 732 F.3d at 170).[5]

### 2. *Application*

We conclude that Plaintiff met the requirements summarized above for establishing specific Indiana jurisdiction over Defendant in this case. The central tenets of Plaintiff's theory of liability are that (i) Defendant breached Representation No. 8 of the MLPA that there were no restrictions on the use of the Indiana Property that would interfere with the mortgagor's ability to make its payments or adversely affect the value of the Property and (ii) Defendant failed to comply with its contractual commitment to cure the breach. The

---

[5]     Under the reasonableness inquiry, we evaluate the following factors:  (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interests of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113 (citations omitted).  Although we consider a variety of factors, "the 'primary concern' is 'the burden on the defendant.'" *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

restrictions imposed by the Hospital included the clause forbidding use of the Property except for in a specified manner (which allegedly prevented the mortgagor from obtaining a new tenant and thus caused it to default on payment of the Loan), as well as the right of first refusal in favor of the Hospital (which allegedly interfered with the mortgagor's ability to pay the Loan and adversely affected the value of the Property). Plaintiff alleges that Bank of America then breached its commitments under Section 3(c) of the MLPA to either "cure such . . . Breach . . . or, if such . . . Breach  . . . cannot be cured, [to] (i) repurchase the affected Mortgage Loan at the applicable Purchase Price . . . or (ii) substitute a Qualified Substitute Mortgage Loan for such affected Mortgage Loan . " App. At 79.  Bank of America's obligation to "cure" the breach, according to Plaintiff's theory, required it, among other possibilities, to perform some act in Indiana such as obtaining the Indiana Hospital's consent to relinquish the deed restrictions that prevented the mortgagor from meeting its Loan obligations.

Defendant's alleged breach of its contractual representations involved the existence of restrictions on the use and value of Indiana Property. In addition, the obligations expressly undertaken by Defendant under the MLPA were purposefully directed toward residents of Indiana, and the suit arose from and

related directly to those Indiana contacts. In view of Defendant's undertaking of those commitments in the terms of the contract here in question, we see no reason why obliging Defendant to litigate this claim in Indiana would offend traditional notions of fair play or substantial justice, or be unreasonable.

**II.** *Was the New York District Court Correct to Deny Plaintiff's Motion to Retransfer?*

Plaintiff contends that if, as we have concluded, Bank of America was subject to personal jurisdiction in the Indiana court, the Indiana court could not lawfully transfer the venue of the action to New York under § 1631, because that statute authorizes transfer only for "want of jurisdiction." Plaintiff contends accordingly that the New York district court should have granted its motion to send the case back to Indiana and that we should direct that this be done. We disagree.

Such a ruling would fail to heed the Supreme Court's sagacious warning in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). Confronting a similar circumstance, the Court cautioned, "[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation," culminating in a "perpetual game of

- 17 -

jurisdictional ping-pong." *Id.* at 816, 818. Although *Christianson* differed slightly in that the potentially dueling transfer orders were entered *by coordinate courts of appeals*, as opposed to a court of appeals reviewing of a transfer order of a district court in another circuit, that distinction does not lessen the pertinence or importance of the Supreme Court's observation.

If we were to direct that the case be retransferred to Indiana, eventual review by the Seventh Circuit might well result in a ruling that that circuit, and not ours, is authoritative on the reach of jurisdiction of the Indiana courts, a reaffirmance of the Indiana district court's original ruling that Bank of America is *not* subject to personal jurisdiction in Indiana, and a reinstitution of the original transfer to the district court in New York. Whether and where it would end could not be predicted. Such a scenario would be intolerable. Regardless of which court is correct in its appraisal of the jurisdiction question, such a duel between courts of transfers and retransfers would subject the parties to unacceptably mounting expenses and delays. If such occurs, the federal court system abjectly fails to perform its mission of deciding cases with reasonable speed and efficiency at reasonable cost to the parties.

The New York district court was sensitive to the Supreme Court's warning in rejecting Plaintiff's motion for retransfer to Indiana. Citing *Christianson*, it ruled that it would treat the Indiana court's transfer of venue as the law of the case. It reviewed the Indiana court's decision with respect to the absence of personal jurisdiction over Defendant in Indiana to the extent of ruling that it found no *clear* error in that ruling, and thus denied the motion. While we are not in *complete* agreement with the New York district court's ruling (as explained below) we entirely approve of its rejection of the motion to retransfer to Indiana.

Arguably, the standard for this court's review of a transfer order of a district court in a different circuit differs from the standard to be exercised by the transferee district court. As we noted in *SongByrd*, 206 F.3d at 178 n.7, it would be rare for the doctrine of the law of the case to commit a higher court to adhere to a ruling of a lower court. Nonetheless, as noted above, for this court to require retransfer to the Indiana district court based on our conclusion that the Indiana court erred would give rise to the same unacceptable use of the parties as a ping-pong ball as if the retransfer order were made by the transferee district court. Plaintiff has not shown that litigating in New York would subject it to any great inconvenience or unfairness. Allowing the case to remain in the Southern District

of New York, notwithstanding that the Indiana court's transfer order was based on a mistake of law, is a far lesser evil than subjecting the parties to the further expense and delay of a retransfer, with the attendant risk of still further rounds of transfers.

Because the transfer of venue was not available under § 1631, which authorizes transfers only for want of jurisdiction, we think it is our best course to treat the erroneous § 1631 transfer as a transfer under 28 U.S.C. § 1404(a) "[f]or the convenience of [the] parties and witnesses, in the interest of justice."[6] The interest of justice and the convenience of the parties are served by a transfer under § 1404(a) in that it spares the parties from the intolerable expenses, delays, and attendant burdens that would result from having the case batted back and

---

[6] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). While the Indiana district court expressly relied on § 1631 as authority for the transfer, *see U.S. Bank Nat'l Ass'n v. Bank of America N.A.*, No. 1:14-cv-01492, 2015 WL 5971126, at *10 (S.D. Ind. Oct. 14, 2015) ("[T]he Court concludes that it does not have personal jurisdiction over Bank of America. As a result, the Court **TRANSFERS** this case to the Southern District of New York, pursuant to 28 U.S.C. § 1631."), the court also observed, although making no findings relating to the convenience of the parties and witnesses or the interest of justice, that transfer would also be appropriate under § 1404(a). *Id*.

forth from district to district, and that it positions a court to fulfill the mission of the judicial system by deciding the case.

The New York district court denied the Plaintiff's motion to retransfer on the ground that the Indiana court's transfer under § 1631 for want of jurisdiction was not *clearly* erroneous. We see the issue somewhat differently. To say that the Indiana court's transfer order was not *clearly* erroneous does not say it was not erroneous. Because Bank of America was subject to personal jurisdiction in the Indiana court, that court's transfer of venue under § 1631 was not in accordance with law. Nonetheless, transfer of venue to the Southern District of New York would have been appropriate under § 1404(a). Giving regard to Plaintiff's failure to show that it would suffer great harm in being compelled to litigate its case in New York instead of in the forum it chose, the unjust burdens that the courts would inflict on the parties by shuttling them back and forth between Indiana and New York, and the Supreme Court's warnings in *Christianson*, we find it preferable to affirm the New York district court's denial of retransfer on a different basis than that court relied on. Accordingly, we affirm the New York district court's denial of Plaintiff's motion for retransfer to Indiana, treating the

Indiana transfer order as if issued under § 1404(a) and finding such a transfer to be lawful.

**III.** *Did the New York District Court Err in Granting Defendant's Motion for Judgment on the Pleadings under Rule 12(c)?*

In denying Plaintiff's motion to retransfer to Indiana, the New York district court treated the Indiana court's transfer order as lawful and efficacious not only as a transfer of venue to New York, but also as a determination that Bank of America was not subject to personal jurisdiction in the Indiana court and that the case would accordingly be decided under the laws of New York, the transferee state. The court explained, "If a district court receives a case pursuant to a transfer under . . . 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option." *U.S. Bank Nat'l Ass'n v. Bank of America N.A.*, No. 15 Civ. 8153, 2016 WL 5118298, at *12 (S.D.N.Y. Sept. 20, 2016) (quoting *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010)). While we agree with that proposition, we find it has no application to this case because, in our view, Bank of America *was* subject to personal jurisdiction in the Indiana district court, and the original venue, with its governing laws, *was* a proper option. While we

- 22 -

affirm the New York district court's denial of Plaintiff's motion to retransfer to Indiana, we do not affirm the propriety of the original transfer *for want of jurisdiction under § 1631*. We instead affirm the transfer as if made under § 1404(a) by a court that had jurisdiction of the case.

A transfer under § 1404(a) by a court that has jurisdiction of the case has different consequences from a transfer under § 1631 by a court that lacks jurisdiction of the case. Transfers under § 1404(a) by a court that *has* jurisdiction are adjudicated in the transferee state under the law of the transferor state. This is to avoid the unfairness of having a discretionary transfer done for convenience change the law under which the case will be decided. *See Van Dusen v. Barrack*, 376 U.S. 612, 633-34 (1964); 17 Moore's Federal Practice § 111.20[1][b] (3d ed. 2018) ("[W]hen a case is transferred under Section 1404(a), *Van Dusen* requires the same choice of law analysis that would have been applied in the transferor court to be conducted in the transferee court, which may require the transferee court to apply its own law, the law of the transferor court, or some other state's law.").

Under the New York district court's analysis, Indiana's 10-year statute of limitations and its choice of law rules had no pertinence because the case was

- 23 -

never properly lodged in the Indiana court. The transfer under § 1631 to New York mandated the application of New York's six-year statute of limitations, under which the suit was untimely. Our disposition requires that the New York district court treat the case as one properly filed in Indiana, applying Indiana's choice of law rules to determine whether the suit was timely filed. We therefore vacate the New York district court's grant of Bank of America's motion for judgment on the pleadings. We express no view on the question whether the suit was timely filed, when that question is judged under Indiana's choice-of-law rules, as appropriate for a suit properly brought in Indiana and subsequently transferred to New York under § 1404(a).

### IV.  Response to Judge Chin's Concurrence

Judge Chin's concurring opinion expresses doubt whether Bank of America, as the successor entity following its merger with LaSalle, is subject to personal jurisdiction where LaSalle's activities in relation to the events giving rise to liability would have subjected LaSalle to specific  jurisdiction in a suit alleging breach of LaSalle's contracts. Our first answer is that this issue is not in the case, having been forfeited, and/or waived, by Bank of America. *See United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994) (argument not raised on appeal is deemed abandoned,

unless manifest injustice otherwise would result); *see also* Fed. R. Civ. P. 12(h)(1) ("A party waives a[] defense [of lack of personal jurisdiction] by . . . failing to either: (i) make it by motion . . . or (ii) include it in a responsive pleading . . . ."). Bank of America has not argued in this appeal that it is not subject to personal jurisdiction in Indiana for that reason. Indeed, so far as we are aware, Bank of America has never raised that argument in this litigation, notwithstanding its persistent objection, based on other grounds, to personal jurisdiction in Indiana. Its argument has been that it is not subject to Indiana jurisdiction because LaSalle, in negotiating and entering the contract in New York, did not subject itself to Indiana jurisdiction. In fact, in framing its arguments against Indiana jurisdiction, Bank of America has repeatedly acknowledged that LaSalle's actions in negotiating, drafting, and entering into the MLPA are imputed to Bank of America for the purpose of analyzing where Bank of America is subject to personal jurisdiction, effectively conceding that if LaSalle's actions would make it subject to personal jurisdiction in Indiana, Bank of America is also subject. *See, e.g.*, Br. of Def.-Appellee at 33; Def.'s Memo. Opp. Pl.'s Mot. Retransfer (App. 2772-73); Def.'s Reply Memo. Supp. Mot. Transfer (App. 2191); Def.'s Memo. Supp. Mot. Transfer (App. 46); *see also* Def.'s Memo. Opp. Pl.'s Mot. Retransfer (App. at 2784)

- 25 -

(recognizing that "[t]he Transferor Court correctly focused its analysis on [Bank of America's] (*and LaSalle's*) activities with respect to the MLPA and PSA" in determining whether it had specific jurisdiction over Bank of America) (emphasis added).

Because the issue is forfeited, we do not rule on it. We nonetheless observe that we can see no reason why, in a suit to enforce a merger partner's contract, the entity that survives the merger should not be subject to personal jurisdiction in whatever court the actions of the merger partner in relation to the contract would have made the merger partner subject. Upon a merger between two (or more) corporations, each of the merger partners is deemed to survive in the merged entity, and the surviving entity is therefore liable for the liabilities of the corporations that joined in the merger. According to James D. Cox & Thomas Lee Hazen, 4 Treatise of the Law of Corporations § 22:8, "A distinguishing feature of a business combination carried out as a merger or consolidation is that by operation of law the surviving corporation is subject to all the liabilities of the acquired companies." "In contrast," the treatise explains, "when the combination is structured as an asset or stock purchase-sale, absent special circumstances, the acquiring company is subject only to those liabilities it has agreed to assume." *Id.*

Because a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation, subject to all the liabilities of the absorbed corporation, we see no reason to doubt that Bank of America, as the surviving entity, would be subject to jurisdiction in Indiana in a suit based on breach of LaSalle's contract if LaSalle's Indiana-directed actions in relation to the contract would have made Lasalle subject to Indiana jurisdiction. (In contrast, the theory of *general jurisdiction* would allow the suit against the successor by merger only in those jurisdictions where the defendant corporation at the time of filing is "essentially at home," *see Daimler AG v. Bauman* , 517 U.S. 117, 122 (2014) and not in places where, prior to the merger, the absorbed merger partner was at home.)

Furthermore, if the rule were as Judge Chin suggests, the rule would be subject to serious abuse: a corporation liable to suit in a state in which it does not wish to be sued could simply arrange a merger with a dummy corporation and thus avoid being subject to an undesired jurisdiction in the state where its actions incurred the liability.

We think Judge Chin has misread the New York precedent he cites. He relies on a short passage from *BRG Corp. v. Chevron U.S.A., Inc.*, 82 N.Y.S.3d 798, 799 (N.Y. App. Div. 2018), which quotes from and adopts the rule stated in *Semenetz*

*v. Sherling v. Walden Inc.*, 801 N.Y.S.2d 78 (N.Y. App. Div. 2005), *aff'd on other grounds* 851 N.E.2d 1170 (N.Y. 2006). The line of authority Judge Chin cites does not apply to successor liability *that results from a merger*.

What those New York decisions reveal is that the answer to our question—whether liability as a successor in interest also entails being subject to personal jurisdiction where the actions of the predecessor would have made the predecessor subject—depends on the basis of the successor liability. The fair inference of the precedents is that, while successor liability based on acquisition of a predecessor's assets does not necessarily make the defendant also amenable to jurisdiction where the predecessor's actions would have made the predecessor subject to specific jurisdiction, the rule is different where the successor liability of the defendant derives from a merger with the predecessor. So far as appears from the decisions, none of Judge Chin's cases involves successor liability *based on merger*; nonetheless, these decisions imply, indeed virtually state, that where the successor status is based on merger, the merged entity is subject to jurisdiction wherever its merger partner's actions would have made the merger partner subject in a suit based on the merger partner's liability.

In *Semenetz*, the plaintiff, who was injured in New York while operating a sawmill brought a New York personal injury action for products liability against an Alabama corporation (identified as "Sawmills"), which had purchased the assets of the company ("Edger") that had sold the sawmill to plaintiff's New York employer. The plaintiff sought to impose both New York jurisdiction and liability on Sawmills based on the argument that Sawmills, having purchased the assets of Edger, was subject to "successor liability" under either the so-called "product line" or "continuing enterprise" exceptions to "the general rule [that] a corporation which acquires the assets of another is not liable for the torts of its predecessor." *Semenetz*, 801 N.Y.S.2d at 80. The Appellate Division ruled, "[T]he 'product line' and 'continuing enterprise' exceptions [to nonliability of successor entities] deal with the concept of tort liability, not jurisdiction." *Id.* at 81. Therefore, even assuming that Sawmills was liable under a products liability claim for the tort of Edger, whose assets it had purchased, its successor liability did not render it subject to New York jurisdiction, as Edger would have been. However, in the very next sentence, the decision explicitly "recognize[d]" that, in contrast, "in certain circumstances the successor corporation 'may inherit its predecessor's jurisdictional status,'" and cited to a number of cases addressing those

circumstances. *Id.* Among the cases cited by *Semenetz* with approval as discussing circumstances where the successor to the predecessor's liability also "inherits" the predecessor's jurisdictional status is *Schenin v. Micro Copper Corp.*, 272 F. Supp. 523, 526 (S.D.N.Y. 1967), which recognized that, had the successor liability been based on merger (as opposed to successor liability based on purchase of assets), the successor would "inherit" the predecessor's jurisdictional status.

The *Schenin* suit was brought in New York against an out-of-state corporation, Micro Copper Corporation ("Micro"), as successor to the liability of Vanura Uranium ("Vanura"), on the theory that Micro, having purchased the assets of Vanura, was not only liable for Vanura's liabilities but also subject to jurisdiction where Vanura would have been subject. The court ruled that where the theory of successor liability is based on the successor's purchase of the predecessor's assets, the successor is not rendered subject to jurisdiction where the predecessor would have been subject in such a suit. The court, however, explicitly contrasted successor liability based on purchase of the predecessor's assets with successor liability based on a merger with the predecessor, stating, "The insurmountable hurdle in plaintiff's path [in seeking to subject the defendant to New York jurisdiction on the basis of its successor liability] is the sound distinction

in law between a statutory merger and an acquisition of assets." *Schenin*, 272 F. Supp. at 526. The court observed that the plaintiff "has sought through ambiguous rhetoric and disproven implication" to represent Micro's acquisition as a merger, but had "failed to adduce a single shred of probative evidence that the transaction . . . was anything but an acquisition of assets . . . ." *Id.*

In other words, while the holding of *Semenetz* was that successor liability on the basis of the "product line" or "continuing enterprise" exceptions to successor-nonliability does not confer on the successor the jurisdictional status of the predecessor, the decision explicitly recognizes that the rule is otherwise when the successor status results from merger with the predecessor.

As noted, Judge Chin cites a sentence from *BRG*, which relies on, and substantially quotes from, the *Semenetz* precedent. In *BRG*, the plaintiff brought a New York suit against Valero Energy Corporation ("Valero"), a foreign corporation, asserting liability to recover the costs of remediating environmental contamination that was caused by Valero's "predecessor[] in interest." *BRG*, 82 N.Y.S.3d at 798. The court of first instance had denied Valero's motion to dismiss for lack of jurisdiction, reasoning that Valero "was the successor in interest to a company that was itself subject to personal jurisdiction in New York." *Id.* at 799.

The Appellate Division reversed explicitly basing its decision on the *Semenetz* precedent, ruling that while Valero's status as a successor might make it liable for its predecessor's tort, its successor status did not subject it to personal jurisdiction in New York merely because its predecessor was so subject. *BRG* did not explain the basis for deeming Valero a successor in interest to the tortfeasor. The decision says nothing to suggest that Valero had merged with the predecessor. Because (a) the *BRG* court deemed the *Semenetz* precedent to be controlling, (b) the *Semenetz* court had distinguished successorship resulting from merger from the successorship involved in that case, and (c) nothing in the *BRG* decision indicated that the defendant's successor status resulted from merger with the obligor, *BRG*'s ruling expressed in its quotation from *Semenetz* presumably did not involve successorship through merger. If it had, the *BRG* ruling would have been contrary to the rule expressed by the *Semenetz* decision, which *BRG* purported to follow. Indeed, *BRG* recognized as per *Semenetz* that in some circumstances (unlike the facts of *BRG*) a successor entity does "inherit jurisdictional status." *Id.* at 799. *BRG* therefore does not support the proposition that a successor *by merger* is not subject to jurisdiction where its merger partner's actions would have subjected the merger partner to jurisdiction for breach of its contracts.

Judge Chin may have been misled by the *BRG*'s slight misquotation of the *Semenetz* precedent. In its critical sentence that was quoted in the *BRG* opinion, the *Semenetz* court had made clear that it was "[t]he 'product line' and 'continuing enterprise' exceptions to the [nonliability of a successor that] deal with the concept of tort liability, not jurisdiction." *Semenetz*, 801 N.Y.S.2d at 81. In quoting that sentence from *Semenetz*, however, *BRG* changed *Semenetz*'s sentence to say, "The *'successor liability rule[s]'* deal with the concept of tort liability, not jurisdiction." *BRG*, 82 N.Y.S.3d at 799 (emphasis added). The alteration of the *Semenetz* sentence, if considered out of context, could suggest that successor liability never entails successorship to the predecessor's jurisdictional status. If that had been *BRG*'s meaning, its rule would have been contrary to the *Semenetz* holding. *BRG*, however, made clear that it was adopting *Semenetz*'s rationale. *Id.* ("Plaintiffs do not challenge *Semenetz*'s holding or its rationale, nor do they ask us to chart our own course on this novel and unsettled jurisdictional issue.").

Nor is Judge Chin's speculation supported by the Seventh Circuit case he cites. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003). In *Purdue Research*, the plaintiff sued a French corporation in Indiana for breach of contract. The plaintiff's contract, however, was not originally with the

French defendant. The contract had been assigned by the plaintiff's contractual counterpart to the French defendant in an asset purchase. The plaintiff sought to justify subjecting the French defendant to Indiana jurisdiction on a successor-in-interest theory by reason of its purchase of the contract in question from an entity that was subject to suit in Indiana. The Seventh Circuit upheld the District Court's dismissal for want of personal jurisdiction in Indiana. The court ruled that the French defendant's purchase of limited assets including the breached contract from an entity that was subject to suit in Indiana did not render it subject to Indiana jurisdiction as a successor. The court explicitly noted that the defendant "did not merge with [the seller of the assets] nor did it purchase all (or substantially all) of [the seller's] assets," implying that the result would be otherwise had either of these been true. *Id.* at 785.

## CONCLUSION

For the reasons set forth above, we hereby (i) **REVERSE** the Indiana district court's ruling that it lacked personal jurisdiction over Defendant; (ii) **AFFIRM** the New York district court's denial of Plaintiff's motion for retransfer to Indiana (treating the transfer order as one made under § 1404(a) of Title 28, rather than under § 1631); (iii) **VACATE** the judgment rendered in favor of

Defendant on the basis of the untimeliness of the suit as judged under New York choice of law rules; and (iv) **REMAND** to the district court to adjudicate under the choice-of-law rules of Indiana.

CHIN, *Circuit Judge*, concurring:

I concur in the majority's decision to affirm the denial of the motion to retransfer, and agree that the case should be remanded for further proceedings.

I am not persuaded, on the present record, that Indiana had specific personal jurisdiction over Bank of America. Bank of America's contacts with respect to the relevant contracts were in New York only. The MLPA and PSA were negotiated, drafted, and executed in New York, and include New York choice-of-law clauses. Bank of America is subject to personal jurisdiction in Indiana, if at all, only because it is a successor-by-merger to LaSalle. While a successor-by-merger is "subject to all the liabilities of the acquired compan[y]," James D. Cox & Thomas Lee Hazen, 4 Treatise of the Law of Corporations § 22:8 (3d ed.), it is not always the case that an acquired company's jurisdictional contacts can be imputed to the successor-by-merger. Even though Bank of America is liable on the agreements, that does not mean that Bank of America is necessarily subject to suit in Indiana because of LaSalle's jurisdictional contacts. *Compare BRG Corp. v. Chevron U.S.A., Inc.*, 82 N.Y.S.3d 798, 799 (App. Div. 4th Dep't 2018) ("The successor liability rule[s] deal with the concept of tort liability, not jurisdiction. When and if [successor liability] is found applicable, the

corporate successor would be subject to liability for the torts of its predecessor in any forum having in personam jurisdiction over the successor, but the [successor liability rules] do not and cannot confer such jurisdiction over the successor in the first instance." (alteration in original) (internal quotation marks omitted)), *with Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) (recognizing a predecessor's jurisdictional contacts may be imputed to a successor corporation where the successor corporation is a mere continuation of the predecessor or where the forum's successor liability laws would hold the successor liable for the predecessor's actions).

I do not believe, on the record before us, that it is clear that Indiana has specific personal jurisdiction over Bank of America. I would, therefore, leave the question of personal jurisdiction to the district court in the first instance to decide after it determines the choice of law question. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.4 (4th ed. April 2018 Update) ("[S]pecial problems are presented when [personal] jurisdiction over a defendant is justified by a related entity's contacts with the forum . . . . The very nature of these often difficult issues makes their resolution extremely fact dependent.").

Accordingly, I would remand for the district court to resolve the question of specific personal jurisdiction, in addition to the choice-of-law and statute of limitations issues.