21-975-cv
*Lelchook v. Société Générale de Banque au Liban SAL*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021

(Argued: May 17, 2022     Decided: April 26, 2023)

Docket No. 21-975

ESTER LELCHOOK, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID MARTIN LELCHOOK, MICHAEL LELCHOOK, YAEL LELCHOOK, ALEXANDER LELCHOOK, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DORIS LELCHOOK, MALKA KUMER, CHANA LIBA KUMER, MIRIAM ALMACKIES, CHAIM KAPLAN, RIVKA KAPLAN, BRIAN ERDSTEIN, KARENE ERDSTEIN, MA'AYAN ERDSTEIN, CHAYIM KUMER, NECHAMA KUMER, LAURIE RAPPEPPORT, MARGALIT RAPPEPORT, THEODORE (TED) GREENBERG, MOREEN GREENBERG, JARED SAUTER, DVORA CHANA KASZEMACHER, CHAYA KASZEMACHER ALKAREIF, AVISHAI REUVANE, ELISHEVA ARON, YAIR MOR, MIKIMI STEINBERG,

*Plaintiffs-Appellants,*

– v. –

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,

*Defendant-Appellee.*[*]

---

[*] The Clerk of Court is directed to amend the case caption to conform to the above.

B e f o r e :

RAGGI, WESLEY, and CARNEY, *Circuit Judges*.

————————

Plaintiffs-Appellants are 21 U.S. citizens who were harmed, and the estate and family members of a U.S. citizen who was killed, in rocket attacks carried out in Israel in 2006 by the terrorist organization Hizbollah. Plaintiffs allege that the Lebanese Canadian Bank ("LCB") provided extensive financial assistance to Hizbollah in the years leading up to the attacks. In 2011, Defendant-Appellee Société Générale de Banque au Liban SAL ("SGBL") acquired all of LCB's assets and liabilities in a transaction conducted under the laws of Lebanon. Plaintiffs sue for damages under the Anti-Terrorism Act of 1990 and seek to hold SGBL liable as LCB's successor. The United States District Court for the Eastern District of New York (Dearie, *J.*) dismissed the complaint, concluding that SGBL did not inherit LCB's status for purposes of personal jurisdiction when it acquired LCB's assets and liabilities. Because we conclude that Plaintiffs' successor-jurisdiction theory raises an important and unresolved issue under New York law, we certify two questions to the New York Court of Appeals.

QUESTIONS CERTIFIED.

————————

ROBERT J. TOLCHIN, The Berkman Law Office, LLC, Brooklyn, NY, *for Appellants*.

BRIAN J. LESKE (Michael J. Sullivan, *on the brief*), Ashcroft Law Firm, LLC, Boston, MA, *for Appellee*.

————————

CARNEY, *Circuit Judge*:

This appeal concerns the implications, for purposes of specific personal jurisdiction, of an entity's acquisition of all of another entity's assets and liabilities. Plaintiffs-Appellants are 21 U.S. citizens who were harmed, and the estate and family members of a U.S. citizen who was killed, in rocket attacks perpetrated in Israel in 2006 by the terrorist organization Hizbollah. Plaintiffs allege that the Lebanese Canadian

2

Bank ("LCB") provided extensive financial assistance to Hizbollah in the years leading up to the attacks. In parallel litigation against LCB, we have held that LCB is subject to personal jurisdiction in New York for claims related to the 2006 attacks, *see Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 174 (2d Cir. 2013), and that factual allegations similar to those here, brought against LCB, state a plausible claim under the Anti-Terrorism Act of 1990 ("ATA"), 18 U.S.C. § 2331 *et seq.*, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 863–67 (2d Cir. 2021). In 2011, Defendant-Appellee Société Générale de Banque au Liban SAL ("SGBL") acquired all of LCB's assets and liabilities in a transaction conducted under the laws of Lebanon. In this action, filed in the United States District Court for the Eastern District of New York (Raymond J. Dearie, *J.*), Plaintiffs now seek to hold SGBL liable, as LCB's successor, under the ATA for damages stemming from the 2006 attacks.

The district court granted SGBL's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-cv-33 (RJD), 2021 WL 4931845 (E.D.N.Y. Mar. 31, 2021). In the district court's view, New York law recognizes an inherited-jurisdiction theory only when there has been a "merger" of the two entities in question. *Id*. at *2–3. Plaintiffs now challenge that conclusion, contending that when a successor entity acquires a predecessor's assets and liabilities, it also inevitably acquires the predecessor's jurisdictional status with respect to claims that give rise to those liabilities. Because we conclude that Plaintiffs' successor-jurisdiction theory raises an important and unresolved issue under New York law, and because we cannot predict with confidence how the New York Court of Appeals would resolve the issue, we certify to the court the following two questions:

1. Under New York law, does an entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?

3

2. In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?

## BACKGROUND

### I. Factual background[1]

Plaintiffs are the estate and family members of a U.S. citizen—David Martin Lelchook—who was killed, and 21 other U.S. citizens who were harmed, in rocket attacks carried out by the Hizbollah terrorist organization against civilian population centers in Israel between July 12 and August 14, 2006 (the "2006 attacks"). Plaintiffs allege that LCB, a corporation organized under the laws of Lebanon and headquartered in Beirut, Lebanon, provided extensive banking services to Hizbollah in the period leading up to the 2006 attacks. SGBL is a private joint stock company incorporated in Lebanon and with headquarters in Beirut.

In February 2011, the U.S. Department of the Treasury designated LCB as a financial institution of "primary money laundering concern," citing LCB's extensive involvement with and support for Hizbollah. App'x at 51. About four months later, in June 2011, SGBL and LCB executed a "Purchase Agreement." The Purchase Agreement provided that, in exchange for a payment to LCB of $580 million (to occur upon a "Completion Date"), "the Seller [LCB] shall transfer, convey, and assign . . . to the Purchaser [SGBL], . . . and the Purchaser shall receive and assume from the Seller, all of the Seller's Assets and Liabilities." App'x at 52, 61, 140. Importantly, it provided further:

---

[1] The factual narrative presented here is drawn from the complaint filed on December 9, 2019. For purposes of reviewing the district court's ruling, we construe the pleadings and supporting materials in the light most favorable to Plaintiffs. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). We are not bound, however, by "'a legal conclusion couched as a factual allegation.'" *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Assumed Liabilities consist *inter alia* of any and all of the Seller's liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the Seller's Business, all as at the Completion Date.

App'x at 53, 61.[2]

Plaintiffs allege that, in February 2017, "after SGBL's purchase of LCB's assets and assumption of its liabilities, LCB represented to the United States Supreme Court that it had been rendered 'defunct, insolvent, and unable to pay any judgment rendered against it.'" App'x at 54. It appears LCB continues to exist, however, at least for the purpose of defending related litigation in this Court. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 866–67 (2d Cir. 2021) (concluding that the plaintiffs had stated a plausible ATA claim against LCB). In 2020, the United States District Court for the Eastern District of New York found, in similar litigation based on the record before it, that "LCB continues to exist as an entity and is litigating in the *Kaplan* case currently before the Second Circuit." *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-7 (CBA) (VMS), 2020 WL 7089448, at *17 (E.D.N.Y. Nov. 25, 2020).

## II.     The *Licci/Kaplan* litigation

The factual allegations in Plaintiffs' amended complaint closely track the allegations made in the separate, long-running action brought in 2008 against LCB by substantially the same set of plaintiffs (the "*Licci/Kaplan*" litigation).

---

[2] Plaintiffs have provided only a portion of the text of the Purchase Agreement in their Appendix. We cite to the available text where possible, and to the allegations about the Purchase Agreement's terms made in Plaintiffs' amended complaint where necessary.

In the instant case, Plaintiffs rely heavily on our holdings in prior appeals in the *Licci/Kaplan* litigation. As mentioned above, that litigation also involves claims under the ATA seeking damages related to the 2006 attacks. We have detailed the protracted course of that litigation in four prior opinions:

- o *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ("*Licci II*")
- o *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*")
- o *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201 (2d Cir. 2016) ("*Licci VI*")
- o *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ("*Kaplan v. LCB II*")[3]

Accordingly, we describe that history now only to the extent relevant to the jurisdictional issue before us.[4]

*First*, we have found that LCB is subject to specific personal jurisdiction in New York for ATA claims related to the 2006 attacks. In *Licci II*, we certified two related questions regarding New York's law of personal jurisdiction to the New York Court of Appeals, namely: (1) whether "a foreign bank's maintenance of a correspondent bank account at a financial institution in New York, and use of that account to effect dozens of wire transfers on behalf of a foreign client, constitute a transaction of business in New York within the meaning of [New York's long-arm statute,] N.Y. C.P.L.R. § 302(a)(1)"; and (2) whether "the plaintiffs' claims . . . arise from LCB's transaction of

---

[3] When in 2018 the plaintiffs in the *Licci/Kaplan* action filed their second amended complaint, Chaim Kaplan replaced Yaakov Licci as the first named plaintiff.

[4] In this Opinion, when referring to the *Licci/Kaplan* line of cases, we generally continue to use the case-naming conventions adopted in *Kaplan v. LCB II*, in which some cases are shorthand labeled *Licci* and some *Kaplan*, each with a roman numeral. *See* 999 F.3d at 846. For consistency and clarity across appeals, we have endeavored to maintain the case-naming conventions that have emerged in other related opinions. The reader is advised that, in referring to these lines of cases, we have omitted only those cases that we find unnecessary to discuss for the purposes of this Opinion.

business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1)." *Licci II*, 673 F.3d at 74–75 (alterations and internal quotation marks omitted). The New York Court of Appeals accepted the certified questions, and it answered them in the affirmative. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012) ("*Licci III*"). The Court of Appeals ruled that the *Licci/Kaplan* plaintiffs' "pleadings establish the 'articulable nexus' or 'substantial relationship' necessary for purposes of [exercising] personal jurisdiction [over LCB]" under New York's long-arm statute. *Id.* at 340.

With the benefit of that decision, we then held that the exercise of personal jurisdiction over LCB in New York comports with due process protections provided by the U.S. Constitution. *See Licci IV*, 732 F.3d at 165. Thus, we concluded, LCB is subject to personal jurisdiction in New York for claims stemming from its alleged connections to Hizbollah in the period leading to the 2006 attacks.

*Second*, in *Kaplan v. LCB II*, we held that the *Licci/Kaplan* plaintiffs' factual allegations—which, again, virtually mirror those made by Plaintiffs in this case—state a plausible claim for damages against LCB under the ATA regime, as modified in 2016 by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d)(2). *See* 999 F.3d at 863–67. More specifically, we ruled that the *Licci/Kaplan* plaintiffs plausibly alleged that LCB aided and abetted Hizbollah in committing the 2006 attacks. *See id.*

These two aspects of our prior decisions serve as the foundation of Plaintiffs' claims here. The first underlies Plaintiffs' theory of personal jurisdiction over SGBL: we have found that LCB is subject to jurisdiction in New York for claims that are materially identical to those at issue in this case, and Plaintiffs submit that SGBL inherited that jurisdictional status from LCB. And the second forms the basis for Plaintiffs' theory of liability against SGBL: we have found that it is plausible to assert that LCB is liable for damages stemming from the 2006 attacks, and Plaintiffs allege that SGBL acquired that liability from LCB.

### III.    Procedural history

In January 2019, Plaintiffs filed this action, naming as defendants SGBL and numerous other parties. In December 2019, Plaintiffs filed an amended complaint—the operative complaint in this appeal—naming only SGBL. The amended complaint asserts claims against SGBL under the ATA, as amended by JASTA, on the theory that "SGBL assumed and bears successor liability for LCB's liability to the plaintiffs." App'x at 58. As discussed, the amended complaint asserts that SGBL is subject to personal jurisdiction in New York on the sole ground that "SGBL assumed and bears successor liability for LCB's conduct . . . and so is also subject to personal jurisdiction in New York." App'x at 23.

SGBL moved to dismiss the complaint for want of jurisdiction and for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(2), (b)(6), and the district court dismissed the complaint for want of personal jurisdiction, ruling that "New York courts have held that short of a merger an asset acquisition is not sufficient to impute a target's jurisdictional status on an acquiror." 2021 WL 4931845, at *2. SGBL's concurrent assumption of LCB's assets and liabilities simply "does not address whether SGBL is subject to jurisdiction in New York," it ruled. *Id.* The district court concluded that because Plaintiffs did not allege that SGBL and LCB "merged" and did not otherwise allege that SGBL has any connection to New York relevant to this lawsuit, personal

8

jurisdiction over SGBL did not lie.[5] The district court did not reach SGBL's argument under Rule 12(b)(6).[6]

Plaintiffs timely appealed.

## DISCUSSION

We review *de novo* a district court's decision to dismiss a complaint for lack of personal jurisdiction, construing the pleadings in the light most favorable to the plaintiffs. *Chloe*, 616 F.3d at 163. To survive a motion to dismiss, "Plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." *Id.* (alterations and internal quotation marks omitted).

A federal court exercising personal jurisdiction over a defendant "must [have] a statutory basis for personal jurisdiction that renders . . . service of process effective." *Licci II*, 673 F.3d at 59. Federal Rule of Civil Procedure 4(k) lists the bases available in

---

[5] In some tension with the district court's conclusion that SGBL and LCB did not merge, the portion of the Purchase Agreement that Plaintiffs attach to their amended complaint states that the sale of assets and assumption of liabilities shall take place "in accordance with Law n[o.] 192 of January 4, 1993 on *Facilitating Bank Merger*." App'x at 61. From the documents in the record, "Law no. 192" appears to refer to the law of Lebanon governing bank mergers. Separately, in its 2012 decision, the New York Court of Appeals described LCB as "now defunct" and stated that LCB "merged with the Lebanese subsidiary of the French bank, Société Générale SA" — apparently a reference to SGBL. *Licci III*, 20 N.Y.3d at 330 & n.1. Nonetheless, neither in their amended complaint nor in their papers on appeal have Plaintiffs alleged or argued that SGBL and LCB completed either a statutory or *de facto* merger as those concepts are commonly used under New York law. Accordingly, we have no occasion in this appeal to consider whether Plaintiffs could establish personal jurisdiction over SGBL on the ground that SGBL and LCB in fact "merged" under New York law.

[6] Plaintiffs argued before the district court that, if the court were to reject its arguments related to personal jurisdiction, the court should permit jurisdictional discovery. The district court did not address this issue directly, but Plaintiffs do not argue in their appellate briefing that the district court erred in failing to grant them jurisdictional discovery. We therefore consider the issue waived. *See Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021).

9

federal courts for serving process. *Id.* Plaintiffs' primary jurisdictional theory relies on Rule 4(k)(1)(A). That rule provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."[7] Fed. R. Civ. P. 4(k)(1)(A).

We understand Rule 4(k)(1)(A) to call for a two-step inquiry. First, "we look to the law of the forum state to determine whether personal jurisdiction will lie."[8] *Licci IV*, 732 F.3d at 168. Second, if the forum state's law provides for personal jurisdiction, we "consider whether the district court's exercise of personal jurisdiction over a foreign

---

[7] At the threshold, we reject two alternative theories of personal jurisdiction that Plaintiffs raise on appeal. First, Plaintiffs argue that SGBL is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2)(B). That rule generally authorizes service of a complaint alleging federal claims when (1) the defendant is not subject to jurisdiction in any state's court of general jurisdiction and (2) exercising jurisdiction comports with constitutional principles. Because Plaintiffs did not raise this argument or invoke Rule 4(k)(2) in the district court, we deem it waived and do not address it further. *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 77 n.1 (2d Cir. 2010).

Second, Plaintiffs' contention that SGBL is subject to personal jurisdiction under the "substantial continuity" doctrine is unpersuasive. *See* Appellants' Br. at 15–16, 25–29 (citing, inter alia, *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 747 (7th Cir. 1994)). Even if that doctrine applied to ATA claims—an issue we do not address here—the doctrine relates to a successor's *liability*, not to personal jurisdiction. Indeed, Plaintiffs advise that they "have been unable to locate precedents" applying the doctrine in the jurisdictional context. Appellants' Br. at 28. Such an expansion of the substantial continuity doctrine would be improper in any event: Federal Rule of Civil Procedure 4(k) sets forth the sole permissible bases for a federal court to exercise personal jurisdiction over a defendant. *See Licci II*, 673 F.3d at 59.

[8] As we recently observed, "Because '[t]he reach of New York's long-arm statute . . . does not coincide with the limits of the Due Process Clause,' when the forum is in New York, we must look to that statute's specific provisions to determine whether personal jurisdiction exists as a matter of state law." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022) (alteration and omission in original) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007)).

defendant comports with due process protections established under the United States Constitution." *Id.*

## I.    Inherited-Jurisdiction Theory

According to Plaintiffs, SGBL is subject to liability under the ATA as LCB's "successor." Appellants' Br. at 16. We have explained that "[u]nder both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (Sotomayor, *J.*). Even so, it is established that "[b]oth New York law and traditional common law . . . recognize certain exceptions to this rule." *Id.*[9] Thus, we have held that

> a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Id.* (quoting *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983)). Plaintiffs contend that the first exception covers SGBL because, under the Purchase Agreement, SGBL "expressly assumed" LCB's liabilities. Appellants' Br. at 17. And they submit that, when a successor in interest is covered by any one of these enumerated exceptions— and in particular the first, for *express* assumption of tort liability—that successor inherits not only its predecessor's liability, but also its predecessor's "jurisdictional status." Appellants' Br. at 17–18 (citing *LiButti v. United States*, 178 F.3d 114 (2d Cir. 1999)).

---

[9] In using the term "traditional common law," then-Judge Sotomayor appeared to be referring to a widely accepted "national rule" that other circuits regularly applied, and with which New York law aligned. *See* 460 F.3d at 209 (citing *United States v. Gen. Battery Corp.*, 423 F.3d 294, 305 (3d Cir. 2005), and *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 651 (7th Cir. 1998)).

At the first step of the Rule 4(k)(1)(A) jurisdictional inquiry, we consider whether New York law recognizes this theory of inherited jurisdiction. To the extent that New York law is uncertain or ambiguous on the issue, our task is "carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (internal quotation marks omitted). "In doing so, we give fullest weight to the decisions of a state's highest court and proper regard to the decisions of a state's lower courts, and we also consider the decisions of federal courts construing state law." *Id.* (internal quotation marks omitted). If, after doing so, we conclude that we are unable to predict how New York law would resolve the issue, we may consider certifying questions "determinative of a claim before us" to the New York Court of Appeals. *Licci II*, 673 F.3d at 74 (internal quotation marks omitted).

In SGBL's efforts to defeat jurisdiction, SGBL relies (as did the district court) on decisions of the New York appellate courts and federal courts that do not address the particular theory that Plaintiffs advance. And in their efforts to claim jurisdiction, Plaintiffs, in turn, rely on decisions that do not apply New York law and are otherwise inapposite. We review this authority below in some detail because it appears to us that misunderstandings may have been introduced over the years.

After such review, we are compelled to conclude that this issue of New York law has yet to be definitively resolved and that we cannot predict its resolution with confidence. We think that definitive clarification by the New York Court of Appeals is needed.

## II. New York state court decisions provide only limited guidance on Plaintiffs' jurisdictional theory

The parties have not identified any decision of the New York Court of Appeals addressing Plaintiffs' inherited-jurisdiction theory. Three Appellate Divisions have

12

issued rulings relevant to the theory, but, on inspection, we find that these rulings provide only limited guidance.

A.     *Semenetz*

In *Semenetz v. Sherling & Walden, Inc.*, the Third Department "recognize[d] that in certain circumstances a successor corporation 'may inherit its predecessor's jurisdictional status.'" 21 A.D.3d 1138, 1140–41 (3d Dep't 2005) (quoting *Societe Generale v. Fla. Health Scis. Ctr., Inc.*, No. 03-cv-615 (MGC), 2003 WL 22852656, at *4 (S.D.N.Y. Dec. 1, 2003)), *aff'd on other grounds*, 7 N.Y.3d 194 (2006). But it found this doctrine inapplicable because *Semenetz* involved the "product line" and "continuing enterprise" exceptions to the general rule that corporations are not liable for the torts of their predecessors. *Id.* The court explained that these two exceptions "do not and cannot confer [in personam] jurisdiction over the successor in the first instance" because they "deal with the concept of tort liability, not jurisdiction." *Id.* at 1139.[10] And on close examination, the authority cited by the *Semenetz* court falls short of establishing the proposition advanced by Plaintiffs here.

The *Semenetz* court cited four cases in support of the general proposition that "in certain circumstances" a successor "may" inherit its predecessor's jurisdictional status.

---

[10] The four traditional exceptions that create successor liability—the exceptions we cited in *National Service Industries*—also arose in the tort liability context. *See Schumacher*, 59 N.Y.2d at 245. Although the *Semenetz* court "recognize[d] that in certain circumstances a successor corporation may inherit its predecessor's jurisdictional status," the court did not make clear whether (or why) the traditional exceptions that create successor liability can confer jurisdiction even though they, too, "deal with the concept of tort liability." 21 A.D.3d at 1140–41 (quotation omitted). This confusion has persisted through the caselaw. *See BRG Corp. v. Chevron U.S.A., Inc.*, 163 A.D.3d 1495, 1496 (4th Dep't 2018) (quoting *Semenetz* as holding that "the [*successor liability rules*] do not and cannot confer [] jurisdiction over the successor in the first instance") (first alteration by the *BRG* court) (emphasis added); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 158 (2d Cir. 2019) (describing *BRG*'s quotation of *Semenetz* as a "slight misquotation of the *Semenetz* precedent").

*Id.* at 1140–41. First, it quoted *Florida Health Sciences Center*, in which the United States District Court for the Southern District of New York observed that "a successor may inherit its predecessor's jurisdictional status in several situations: for example, if there was a *de facto* merger or consolidation of the two entities or if the successor is a 'mere continuation' of the predecessor." 2003 WL 22852656, at *4 (quoting *Kidz Cloz, Inc. v. Officially for Kids, Inc.*, No. 00-cv-6270, 2002 WL 1586877, at *4 (S.D.N.Y. July 17, 2002)). These two examples correspond to the second and third exceptions providing for successor liability as enumerated in *National Service Industries*, but the *Florida Health Sciences Center* court did not expressly address, much less approve, the assumption-of-liability exception that Plaintiffs rely on here.[11] That court further found that these two exceptions addressed issues different from the jurisdictional issue presented in that case. *See id.* Thus, *Florida Health Sciences Center* recognizes, at a high level, that a successor may inherit its predecessor's jurisdictional status through circumstances that correspond to some of the successor liability exceptions, but the *Semenetz* court's citation to *Florida Health Sciences Center* does not shed light on the validity of Plaintiffs' inherited-jurisdiction theory under New York law.[12]

Second, the *Semenetz* court cited *Abbacor, Inc. v. Miller*, No. 01-cv-0803 (JSM), 2001 WL 1006051 (S.D.N.Y. Aug. 31, 2001), as relevant to its discussion. In *Abbacor*, the plaintiff alleged that the defendant was an "alter ego" of a predecessor organization

---

[11] The *Florida Health Sciences Center* court further noted that "a successor-in-interest may be subject to jurisdiction based on the activities of its predecessor if the predecessor and successor [are] one and the same and the predecessor continue[s] to exist as part of the successor." 2003 WL 22852656, at *4 (alterations and internal quotation marks omitted). That circumstance is not relevant here.

[12] The *Florida Health Sciences Center* court did not resolve the jurisdictional issue because it granted the defendants' motion to transfer venue to another district, where the defendants were subject to personal jurisdiction. 2003 WL 22852656, at *7–8.

that had jurisdictionally relevant contacts in New York. *Id.* at *4. The court wrote, "New York courts have frequently held that the pre-incorporation acts of a predecessor corporation can be attributed to a successor corporation for the purpose of establishing long arm jurisdiction where the predecessor and the successor are one and the same." *Id.* (internal quotation marks omitted). Because Plaintiffs do not allege that SGBL and LCB are "one and the same," *Abbacor* is not instructive here.

Third, the *Semenetz* court cited *Applied Hydro-Pneumatics, Inc. v. Bauer Mfg.*, 68 A.D.2d 42 (2d Dep't 1979). There, the Second Department considered a situation in which the defendant purchased the assets, including contract rights, of another company, and utilized the contract rights it had purchased, but refused to pay commissions to the plaintiff—the agent who brokered the contracted-for transaction. *Id.* at 43–45. The court held that the defendant's "voluntary election to complete the contracts constituted, in effect, a nunc pro tunc ratification and adoption of [the predecessor's] acts in New York [that] is sufficient to subject [the defendant] to personal jurisdiction in our courts on a cause of action arising out of transaction of business here between [the plaintiff] and [the defendant's] corporate predecessor." *Id.* at 46. *Applied Hydro-Pneumatics*, too, thus involved circumstances different from those presented here: the successor's performance of the predecessor's contracts subjected it to personal jurisdiction over disputes arising out of the contracts, just as if the successor had been the original contracting party. The holding is grounded in the law of contracts, more than any general doctrine of successor jurisdiction, and so is not relevant in the present tort case.

The fourth authority cited in *Semenetz* is *Schenin v. Micro Copper Corp.*, 272 F. Supp. 523 (S.D.N.Y. 1967). In *Schenin*, a Nevada corporation, Vanura, sold all of its assets to the defendant, Micro, in exchange for shares of Micro common stock. *Id.* at 526. Vanura's stockholders received the Micro shares as a liquidating dividend, and Vanura

15

was then duly dissolved. *See id.* Over a year earlier, however, Vanura had accepted payment from the plaintiff, Schenin, for one million shares of Vanura. *Id*. at 525. Vanura failed to deliver the shares, and following Vanura's dissolution, Schenin sued Micro in New York. Schenin argued that, because Vanura would have been subject to personal jurisdiction under New York's long-arm statute, the court had personal jurisdiction over Micro as Vanura's "successor-in-interest." *Id.* at 526. The district court was unpersuaded. It reasoned that "[t]he insurmountable hurdle in plaintiff's path is the sound distinction in law between a statutory merger and an acquisition of assets." *Id.* In the district court's view, "There exist[ed] no basis in law or reason to impute to Micro, for jurisdictional purposes, activities of Vanura in New York," and it was "untenable" to attribute Vanura's activities to Micro. *Id.* In concluding that it lacked personal jurisdiction over Micro, the *Schenin* court held in essence that successor jurisdiction lies only if there is either (1) a statutory merger or (2) fraud. *See id.*

To be sure, the *Schenin* court did briefly explain that because there had been "no statutory merger between Micro and Vanura," the plaintiff's argument "must rest on an assumption of Vanura's liabilities by Micro." *Id.* The court went on to reject that theory. But, to the extent its description of plaintiff's argument might be read to suggest that an assumption of liabilities would have supported the exercise of personal jurisdiction over Micro under a successor-jurisdiction theory, in the absence of any holding to that effect, *Schenin* sheds no more light on the validity of Plaintiffs' inherited-jurisdiction theory than do cases like *National Service Industries* and *Florida Health Sciences Center*.

Further, when assessing how the New York Court of Appeals would resolve this issue, we hesitate to give much weight to *Schenin* or *Semenetz*'s citation to it. *Schenin* is not a New York state court decision, and the relevant portion of the opinion did not rely on any decisions of New York state courts. Although *Semenetz* cited *Schenin*, it did so in support of the general proposition—which *Semenetz* did not apply— that "in certain

16

circumstances a successor corporation may inherit its predecessor's jurisdictional status." *Semenetz*, 21 A.D.3d at 1140–41 (internal quotation marks omitted). It thus did not directly endorse *Schenin*'s limits on successor jurisdiction—namely, that such jurisdiction lies *only* in the event of a statutory merger or fraud. Indeed, *Schenin* appears to take a stricter view than do more recent decisions of when under New York law a corporation may be a successor for jurisdictional purposes.[13]

For these reasons, in our view, *Semenetz* and the cases it cites do not resolve the issue presented here; nor do they offer especially meaningful guidance.

B.     *BRG Corp.*

The next relevant Appellate Division decision cited by Plaintiffs is *BRG Corp. v. Chevron U.S.A., Inc.*, 163 A.D.3d 1495 (4th Dep't 2018). There, the "plaintiffs contend[ed] that personal jurisdiction exist[ed] over defendant because it ostensibly bears successor liability for a predecessor corporation that was itself subject to personal jurisdiction in New York." *Id.* at 1496. The Fourth Department rejected this theory and concluded that the defendant was not subject to personal jurisdiction in New York. *See id.* In doing so, the court explained that the "plaintiffs do not claim that defendant qualifies for personal jurisdiction under the narrow 'inherited jurisdictional status' exception recognized in *Semenetz*." *Id.* (quoting *Semenetz*, 21 A.D.3d at 1140–41) (alteration omitted). Crucially, the *BRG* court emphasized that the "[p]laintiffs do not challenge

---

[13] For example, as discussed above, more recent cases have suggested that evidence of a *de facto* merger would be sufficient to subject a successor to personal jurisdiction. *See Fla. Health Scis. Ctr.*, 2003 WL 22852656, at *4. That may be inconsistent with *Schenin*, where the court required a *statutory* merger; indeed, the court's description of the transaction in *Schenin* suggests that it could have involved a *de facto* merger.

*Semenetz*'s holding or its rationale, nor do they ask us to chart our own course on this *novel and unsettled jurisdictional issue*." *Id.* (emphasis added).[14]

While the outcome in *BRG* superficially supports SGBL's position, the court's stated reasoning does nothing to shore up the inherited-jurisdiction theory. Instead, *BRG* simply followed *Semenetz*, apparently in light of the plaintiffs' failure to argue it should not. Rather than suggest that New York law is clear about when a successor should be treated as having inherited a predecessor's jurisdictional status, the Fourth Department was of the view that the issue is "novel and unsettled." *Id.* In expressing that view, it highlighted decisions of other courts whose holdings, if adopted by New York courts, would seem to provide for personal jurisdiction over SGBL in this case. But because *BRG* did not adopt those holdings, it is not decisive here on the inherited-jurisdiction theory; rather, it suggests the issue is unresolved in New York.

---

[14] In support of the highlighted characterization, the *BRG* court collected cases from other jurisdictions articulating a more expansive view of successor jurisdiction, including several holding that a successor inherits a predecessor's jurisdictional status when assuming its liabilities. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 & n.18 (5th Cir. 2002) (collecting cases suggesting that it is consistent with due process for a court to exercise personal jurisdiction over an "alter ego or successor of a corporation that would be subject to personal jurisdiction in that court"); *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) (explaining that a sale of "all, or substantially all, the assets of a corporation" could support imputing that corporation's contacts to its successor if forum law would hold the successor liable for the predecessor's actions); *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454 (4th Cir. 1990) (collecting cases from states other than New York that "permit[] imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions"); *Jeffrey v. Rapid Am. Corp.*, 448 Mich. 178, 206 (1995) ("[T]he jurisdictional contacts of a predecessor can be imputed to a successor when the successor expressly assumes all liabilities of the predecessor[.]"). These out-of-state cases do not permit us confidently to conclude that New York law would recognize Plaintiffs' jurisdictional theory.

C. *Gronich*

The third relevant—and most recent—Appellate Division case is *Matter of Gronich & Co. v. Simon Prop. Grp., Inc.*, 180 A.D.3d 541 (1st Dep't 2020). There, a judgment creditor sought "to enforce its judgment against the alleged successor corporation (and affiliates) of the judgment debtor." *Id.* at 542. The First Department concluded that it had jurisdiction over one of the defendants because that defendant was a successor by merger of a company that had received a transfer of assets from the judgment debtor. *See id.* In so concluding, the First Department explained that the defendants' "argument that jurisdictional contacts are not imputed to a successor by merger is misplaced. It is where the 'successor' has merely *acquired the assets* of the predecessor company that the contacts are not imputed." *Id.* (emphasis added).

*Gronich* therefore did not address or resolve whether Plaintiffs' inherited-jurisdiction theory is viable. As SGBL emphasizes, the court distinguished between mergers, where contacts are inherited for jurisdictional purposes, and *acquisitions of assets*, where contacts are not inherited by the successor. But contrary to the district court's analysis, *Gronich* did not "h[o]ld that short of a merger an asset acquisition is not sufficient to impute a target's jurisdictional status on an acquiror." 2021 WL 4931845, at *2. Instead, as Plaintiffs highlight, the court contrasted a merger with the "mere[]" acquisition of assets. 180 A.D.3d at 542. *Gronich* did not hold that a merger is the only path for a successor to inherit a predecessor's jurisdictional status under New York law. Here, SGBL did not acquire merely LCB's assets; it also acquired all of its liabilities. Accordingly, in our view, *Gronich* does not directly support the position of either party in this case.

\* \* \*

19

Our takeaway from the foregoing caselaw is that New York state courts have not spoken on the precise issue presented by this appeal. On one hand, New York courts have firmly held that an asset purchase alone is insufficient to confer personal jurisdiction over a successor. On the other hand, New York courts have also held that in some circumstances a successor does inherit its predecessor's jurisdictional status, including when there is a merger. But New York courts have not squarely addressed a situation in which a successor acquires all of a predecessor's assets and liabilities, but does not do so through either a statutory merger or a transaction that meets established standards for a *de facto* merger.

## III. Federal court decisions do not resolve this issue of New York law

The parties also submit that federal court decisions resolve the jurisdictional issue. We are not persuaded.

### A. *U.S. Bank*

First, SGBL contends that Plaintiffs' jurisdictional theory is foreclosed by our decision in *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019). There, in dicta, the panel majority examined "whether Bank of America, as the successor entity following its merger with LaSalle, is subject to personal jurisdiction where LaSalle's activities in relation to the events giving rise to liability would have subjected LaSalle to specific jurisdiction in a suit alleging breach of LaSalle's contracts."[15] *Id.* at 155. The majority discussed *BRG*, *Semenetz*, and *Schenin*, commenting that "[w]hat those New

---

[15] The panel majority acknowledged that, in light of Bank of America's forfeiture of the issue, the detailed discussion that it provided of personal jurisdictional by successorship was dicta. *U.S. Bank*, 916 F.3d at 155. The panel addressed the issue in response to a concurrence by Judge Chin, who argued that the record did not establish successorship personal jurisdiction and that the Court should have remanded for the district court to address the question of personal jurisdiction in the first instance. *Id.* at 159 (Chin, *J.*, concurring).

York decisions reveal is that . . . whether liability as a successor in interest also entails being subject to personal jurisdiction where the actions of the predecessor would have made the predecessor subject . . . depends on the basis of the successor liability." *Id.* at 156. "The fair inference of the precedents," the panel majority continued, "is that, while successor liability based on acquisition of a predecessor's assets does not necessarily make the defendant also amenable to jurisdiction where the predecessor's actions would have made the predecessor subject to specific jurisdiction, the rule is different where the successor liability of the defendant derives from a merger with the predecessor." *Id.* It concluded, still in dicta, that "these decisions imply, indeed virtually state, that where the successor status is based on merger, the merged entity is subject to jurisdiction wherever its merger partner's actions would have made the merger partner subject in a suit based on the merger partner's liability." *Id.*

Even if its comments were not dicta, however, the *U.S. Bank* majority's analysis would not resolve the issue presented here. As with the New York precedents it discusses, the *U.S. Bank* majority distinguishes between asset acquisitions and mergers, but does not address the cloudy middle ground, where the two entities do not formally *merge*, but the one acquires the other's assets *and, expressly, all of its liabilities,* and the other continues as a corporate entity with assets from its sale. As the *U.S. Bank* majority noted, whether jurisdictional contacts are imputed to a successor "depends on the basis of the successor liability," *id.*, and neither *U.S. Bank* nor the New York cases address the basis presented here—the express assumption of all of the predecessor's liabilities.

### B. *Bartlett*

Second, SGBL points to a district court decision addressing an issue nearly identical to that presented here as persuasive authority for ruling that the court does not have personal jurisdiction over SGBL. *Bartlett*, 2020 WL 7089448. In *Bartlett*, the plaintiffs were individuals and their family members who were injured by Hizbollah

21

terror attacks in Iraq between 2004 and 2011. *Id.* at *1. As relevant here, the plaintiffs brought a claim for successor liability against SGBL resulting from its assumption of LCB's assets and liabilities in the Purchase Agreement, and the plaintiffs argued that "SGBL inherited LCB's personal jurisdiction status." *Id.* at *16.

The *Bartlett* district court rejected the plaintiffs' theory, but on a record somewhat different from that here, and based on an analysis of New York law that, while thorough, was necessarily not definitive.[16] Focusing on the distinction between an asset purchase and a merger, the *Bartlett* court found that it did not have personal jurisdiction over SGBL for the successor liability claim because the plaintiffs did not allege that a merger occurred, nor did they allege an essential element of a merger, "continuity of ownership."[17] *Id.* at *16–17. Crucially, relying on the dicta in *U.S. Bank*, the court reasoned that it was "*only* 'because a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation' that the successor would incur the predecessor's jurisdictional status." *Id.* at *16 (quoting *U.S. Bank*, 916 F.3d at 156) (emphasis added).[18] But as discussed above, *U.S. Bank* and the

---

[16] We recognize that "under New York law certification was not an option for the district court" in *Bartlett* or in the instant case. *Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 493 F.3d 283, 285 n.1 (2d Cir. 2007); *see* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). Accordingly, we do not fault either district court for fulfilling its duty by attempting to predict how New York would resolve the ambiguities of this "novel and unsettled" area of law. *BRG*, 163 A.D.3d at 1496.

[17] The *Bartlett* court also held that it had personal jurisdiction over SGBL for direct claims related to primary liability and aiding-and-abetting liability under the ATA and JASTA. 2020 WL 7089448, at *4–6. That analysis is not at issue in this case, where the sole basis advanced by Plaintiffs for personal jurisdiction over SGBL involves a successorship theory.

[18] The district court in this case followed *Bartlett* and adopted the same reasoning. *See* 2021 WL 4931845, at *3 (stating that *U.S. Bank* "observed it was only 'because a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed

22

relevant New York cases do not hold that successor jurisdiction lies "only" when there is a merger. Rather, they suggest that (1) merger is an example of a situation where successor jurisdiction is available, and (2) asset acquisitions, on their own, are not sufficient to implicate successor jurisdiction. Those principles do not foreclose the possibility of successor or inherited jurisdiction when a successor expressly assumes all of its predecessor's liabilities.

Focusing on continuity of ownership, the *Bartlett* court also stated that "[e]ven if SGBL obtained all of LCB's liabilities, that does not necessarily confer jurisdiction." 2020 WL 7089448, at *17. Because *Bartlett* did not definitively state whether an assumption of liabilities is sufficient to confer jurisdiction, the case does not provide clear guidance on the viability of Plaintiffs' theory. In any event, the two cases it cites to distinguish between a sale and purchase of all assets and liabilities and a merger do not directly support the proposition that a merger is necessary to confer successor jurisdiction. The first citation is to the dicta in *U.S. Bank*, but even in its dicta, that court did not state that conclusion. The second citation is to *National Service Industries*, which addressed the *de facto* merger doctrine under New York law and successor *liability* but did not address the jurisdictional question that we face. *See* 460 F.3d at 212.

C.     *LiButti*

Plaintiffs, for their part, argue that broad language from another two of our decisions apply here and support this novel inherited-jurisdiction theory. Again, we are not convinced.

In *LiButti v. United States*, the Internal Revenue Service ("IRS") sought restitution from Margaux, a Kentucky limited liability company that had received an interest in a

---

corporation that the successor would incur the predecessor's jurisdiction status.'" (quoting *Bartlett*, 2020 WL 7089448, at *17, and *U.S. Bank*, 916 F.3d at 156)).

23

prize racehorse from Edith LiButti, the daughter of Robert LiButti, a delinquent

taxpayer. *See* 178 F.3d at 116–17, 122–23. The United States District Court for the

Northern District of New York held that it had neither *in personam* nor *in rem*

jurisdiction over Margaux because Margaux did not have minimum contacts with New

York. We affirmed those holdings. *See id.* at 122–23. The IRS, however, advanced as an

"alternate theory" for personal jurisdiction in New York that Margaux was a successor

in interest to the obligations of Edith LiButti, whom the district court had ordered to

pay restitution.[19] *See id.* at 123–24. The IRS grounded its alternate jurisdictional theory in

two Federal Rules of Civil Procedure: Rule 25(c),[20] which governs substitution of

parties; and Rule 71,[21] which provides the standard for enforcing relief for or against a

non-party. *See id.* at 123–24. The IRS had not moved to join Margaux under Rule 25(c),

but it argued that even without such a motion "the judgment against the original party

---

[19] Edith LiButti's business, Lion Crest Stable, was a New Jersey entity, but the case arose from the IRS's delivery of a Notice of Seizure and Levy to the racehorse's trainer while the horse was in Saratoga, New York. *LiButti v. United States*, 894 F. Supp. 589, 590 (N.D.N.Y. 1995). The Northern District of New York was therefore able to exercise *in rem* jurisdiction over the horse and adjudicate the dispute between LiButti and the IRS.

[20] When *LiButti* was decided, Rule 25(c) provided:

> Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c) (1999). The Rule has been revised since 1999, but the revisions are only stylistic. *See* Fed. R. Civ. P. 25(c) (2022); Fed. R. Civ. P. 25 advisory committee's note to 2007 amendment.

[21] When *LiButti* was decided, Rule 71 provided that "when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party." Fed. R. Civ. P. 71 (1999). Like Rule 25(c), Rule 71 has been subject only to stylistic revisions since 1999. *See* Fed. R. Civ. P. 71 advisory committee's note to 2007 amendment.

binds the successor in interest as though the successor had been joined or substituted," thereby allowing the judgment against Edith LiButti to be "lawfully enforced" against Margaux per Rule 71. *See id.* at 124.

We rejected the IRS's jurisdictional theory in *LiButti*, but in doing so we spoke in somewhat unnecessarily expansive language about personal jurisdiction being transferred to a successor under Rule 25(c). Plaintiffs cite our observation there that "[i]n several cases involving the question of whether a person could be substituted or joined under Rule 25(c), various courts have held that when a person is found to be a successor in interest [under applicable state law], the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest, without regard to whether they had any other minimum contacts with the state." 178 F.3d at 123–24 (collecting cases).[22] In each of the cited cases in which the court exercised personal jurisdiction over a non-resident successor, we said, jurisdiction "was established only where the non-resident was found to be a 'successor in interest' to the obligations of the party." *Id.* at 124. Observing that "[s]uccessor liability is a question of State law," we applied the law of New Jersey, which adopted the traditional four exceptions that create successor liability, including when the successor "agreed to assume" the predecessor's liabilities. *Id.* We concluded that Margaux "[did] not fall into any of these exceptions, and therefore it [was] not a successor in interest or subject to successor liability. As a consequence, the district court lacked personal jurisdiction over [it,]" we explained. *Id.* at 125.

---

[22] We referenced five cases in which personal jurisdiction transferred to the substituted or successor party pursuant to Rule 25(c), but we did not cite any case in which the basis for personal jurisdiction was that the successor had assumed the predecessor's liabilities. *LiButti*, 178 F.3d at 124–25.

Thus, the language from *LiButti* that Plaintiffs point to—that "successors inherit the jurisdictional status of their predecessor, 'simply as a consequence of their status as a successor in interest,'" Appellants' Br. at 17—was merely the Court's reading of "several cases involving the question of whether a person could be substituted or joined under Rule 25(c)," a question that was not before the Court in *LiButti*. 178 F.3d at 123. The *LiButti* Court did not cite or purport to rely on New York law; it concluded that Margaux was "not a successor in interest or subject to successor liability" under New Jersey law. *Id.* at 124–25. In consequence of that conclusion, the Court held that "[e]ven assuming the government's argument [was] properly before [it] despite the lack of a motion under Rule 25(c)," Margaux could not be subject to personal jurisdiction. *Id.*

To be sure, *LiButti*'s holding did not *foreclose* the possibility that, had Margaux been a successor in interest, it might have been subject to jurisdiction based on that status. But *LiButti* fell far short of holding that, as a matter of New York law, a successor in interest always inherits the jurisdictional status of its predecessor. *LiButti* applied another state's law; the Court concluded that Margaux was *not* a successor in interest; and the case did not involve a situation where one company acquired all the assets and liabilities of another company. *LiButti* does not, therefore, determine the viability of Plaintiffs' theory here.

D.      *Transfield*

In the second case that Plaintiffs rely on, *Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*, we considered whether a company was "found within the district" for the purpose of maritime attachment under federal law. 571 F.3d 221, 222 (2d Cir. 2009). We held that "if a corporation is registered with the New York Department of State—and is therefore 'found within the district' . . .—that corporation's alter egos are also 'found within the district' and, therefore, the property of those alter egos is not subject to maritime attachment." *Id.* at 224. In reaching that conclusion, we observed that "in

26

general, 'alter egos are treated as one entity' for jurisdictional purposes." *Id.* (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991)). We also cited *Patin v. Thoroughbred Power Boats Inc.* in support of our assertion about jurisdiction over alter egos, quoting in a parenthetical that court's statement that "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Transfield*, 571 F.3d at 224 (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

As this discussion makes clear, *Transfield* arose in the context of federal maritime law, not New York law. What is more, it addressed jurisdiction over alter egos, rather than a purchaser of assets or liabilities, as evidenced by *Transfield*'s discussion of *Patin*.[23] Accordingly, *Transfield*, too, is inapposite to the question before us.

Plaintiffs emphasize that numerous federal district courts in New York have interpreted the broad language in *LiButti* and *Transfield* to hold that successors are subject to personal jurisdiction whenever they fall into an exception that renders them subject to substantive successor liability—even when ruling on a Rule 12(b)(2) motion to dismiss rather than on issues similar to those discussed in *LiButti* and *Transfield*. In particular, the district courts have relied on *LiButti*'s statement that "the court gains personal jurisdiction over [successors] simply as a consequence of their status as a

---

[23] As the *Patin* court explained, "The theory underlying these cases [addressing alter ego liability] is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other[.]" 294 F.3d at 653. That analysis does not carry the same force when, as here, there is no allegation of alter ego liability and the predecessor and successor corporations both continue to exist after the transfer of liabilities.

successor in interest" and the text that *Transfield* quoted from *Patin* to create, essentially, a rule of thumb: if a plaintiff "state[s] a claim against the [successor] for successor liability, there is personal jurisdiction over the [successor]." *Time Warner Cable, Inc. v. Networks Grp., LLC*, No. 09-cv-10059 (DLC), 2010 WL 3563111, at *6 (S.D.N.Y. Sept. 9, 2010); *accord Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 415–16 (S.D.N.Y. 2022); *Fly Shoes s.r.l. v. Bettye Muller Designs Inc.*, No. 14-cv-10078 (LLS), 2015 WL 4092392, at *2 (S.D.N.Y. July 6, 2015); *Vorcom Internet Servs., Inc. v. L & H Eng'g & Design LLC*, No. 12-cv-2049 (VB), 2013 WL 335717, at *3 (S.D.N.Y. Jan. 9, 2013). But these statements tend to oversimplify the issue by proclaiming that any entity deemed a "successor" is subject to jurisdiction where its "predecessor" is so subject. In the word "successor," many different configurations of assets, individuals, and control may be found.

* * *

Respectfully, in our view, *LiButti* and *Transfield* do not support the proposition that such a broad rule of personal jurisdiction is established under New York law. As described above, the two cases discussed distinct issues—Rule 25(c) substitution and federal law regarding maritime attachment—and they did not interpret or apply New York law. The district court decisions above, meanwhile, simply apply the broad language in *LiButti* and *Transfield* to arrive at an interpretation of New York's law of successor jurisdiction that those two cases do not fully support.

In light of the confusion prompted by our decisions in *LiButti* and *Transfield*, we emphasize now that they address successorship issues only in the circumstances in which they arose, and that they should not be read to resolve broad and open issues of personal jurisdiction under New York law. We do not express a view on whether New York law *could* support the rule of inherited jurisdiction that some district courts have adopted and that Plaintiffs urge on us here. Rather, in view of the observations set forth

28

above, we conclude that those cases do not provide a sound basis for us to predict with confidence that New York would adopt those courts' interpretations as the correct jurisdictional standard under New York law.

Accordingly, *U.S. Bank*, *Bartlett*, *LiButti*, and *Transfield* do not resolve whether SGBL is subject to personal jurisdiction in this action.

## IV.    Certification

Plaintiffs request that, if we do not rule in their favor, we certify the question whether New York law recognizes inherited jurisdiction to the New York Court of Appeals. We may certify a question of state law to a state's highest court if state law permits certification. *See* 2d Cir. Loc. R. 27.2(a). Under New York law, we may certify to the New York Court of Appeals "dispositive questions of law" in cases pending before us "for which no controlling precedent of the Court of Appeals exists." 22 N.Y.C.R.R. § 500.27(a). When determining whether to certify a question to the New York Court of Appeals, we consider three primary factors. First, we may certify a question "if the New York Court of Appeals has not squarely addressed [the] issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it." *Licci II*, 673 F.3d at 74 (internal quotation marks omitted). Second, the issue must be important to the state and "its resolution must require value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make." *Id.* (alteration and internal quotation marks omitted). Third, the issue must be potentially "determinative of a claim before us." *Id.* (internal quotation marks omitted).

We find that each of these three factors weighs in favor of certification in this case. First, the Court of Appeals has not addressed the issue whether a successor inherits its predecessor's jurisdictional contacts when it assumes all of its predecessor's liabilities but there is no claim of merger in law or fact. While some Appellate Division

29

and federal court decisions provide some guidance, they do not address the precise issue presented here. Indeed, a New York Appellate Division recently recognized it as "novel and unsettled." *BRG*, 163 A.D.3d at 1496. Accordingly, the first factor weighs in favor of certification.

Second, we think this issue is of importance to New York. As we explained in *Licci II*, determining the scope of personal jurisdiction under New York law is "a task that requires the exercise of value judgments and important public policy choices, best left to New York's highest court, if possible." 673 F.3d at 74 (internal quotation marks omitted).

We explored some of those public policy choices in our 2019 decision in *U.S. Bank*. There, the panel majority discussed the jurisdictional impact of a business combination effected through a formal merger. The general rule, we said, is that "a successor by merger is deemed by operation of law to be *both* the surviving corporation and the absorbed corporation, subject to all the liabilities of the absorbed corporation." *U.S. Bank*, 916 F.3d at 156 (citing James D. Cox & Thomas Lee Hazen, 4 Treatise of the Law of Corporations § 22:8) (emphasis added). We commented that, in light of that general rule, "we can see no reason why, in a suit to enforce a merger partner's contract, the entity that survives the merger should not be subject to personal jurisdiction in whatever court the actions of the merger partner in relation to the contract would have made the merger partner subject." *Id.* at 155. Moreover, we warned, a different rule would allow "serious abuse" because "a corporation liable to suit in a state in which it does not wish to be sued could simply arrange a merger with a dummy corporation and thus avoid being subject to an undesired jurisdiction in the state where its actions incurred the liability." *Id.* at 156.

The same warning seems apt here. LCB's existence may offer scant promise to the hopeful tort claimant notwithstanding LCB's status as a defendant in a lawsuit

pending in New York. *See Kaplan v. LCB II*, 999 F.3d at 866–67. A fact-based rule that would allow LCB effectively to decouple its assets from its enforceable liabilities, for value, and SGBL to acquire "all assets and liabilities" but escape jurisdiction for claims asserting LCB's liabilities seems anomalous and pregnant with the same possibility for abuse that we identified in *U.S. Bank*, especially when significant aspects of the acquisition are not known.

Further, *U.S. Bank* arose in the context of a contract claim against a successor corporation, with sophisticated business entities on each side of the transaction. Here, where the claimants allege grave personal injury for which LCB may bear responsibility, the concern that an abuse of form (if any there be) could allow avoidance of liability seems even more compelling. In these circumstances, New York might choose to give even closer scrutiny to the facts of the combination than in cases past, and less weight to the label affixed by the parties, so as to avoid allowing the seller to shed its liabilities while shielding the acquirer from "being subject to an undesired jurisdiction in the state where [the seller's] actions incurred the liability." *See U.S. Bank*, 916 F.3d at 156. Further factual development about the business combination that the parties undertook might be warranted.

To be sure, New York serves important state interests when it facilitates various forms of business combinations within its borders and adopts rules of liability and jurisdiction whose clarity makes them easy to follow and their results easy to predict. It may be that, when both the acquiring and acquired entities continue to exist as a formal matter, New York's long-arm statute was not intended to or simply does not permit— consistent with New York's policies and values—the exercise of jurisdiction over a non-domiciliary successor corporation.

This case thus calls for a close calibration of the differences, for purposes of successor jurisdiction in New York, between a formal merger and a complete

acquisition of assets and liabilities for money in which one entity formally survives the other. We conclude, therefore, that the second factor weighs in favor of certification.[24]

Finally, for the third factor, the questions are potentially determinative of the claim at issue here: if New York does not recognize an inherited-jurisdiction theory under these circumstances, then the district court's judgment dismissing Plaintiffs' claims must be affirmed.[25]

Accordingly, we certify to the New York Court of Appeals the following questions:

1. Under New York law, does an entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?

2. In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?

Consistent with our standard practice, we do not constrain the scope of the Court of Appeals' analysis through the formulation of the questions that we have adopted here. *See 10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 126 (2d

---

[24] Furthermore, state courts outside of New York that have addressed the inherited-jurisdiction theory carefully weighed state public policy considerations that in our view are best left to the forum state to decide in the first instance. *See, e.g.*, *Jeffrey*, 448 Mich. at 199 (describing how the successor "reaped the benefits of [the predecessor's] Michigan business and correspondingly should be held to the same jurisdictional qualities of its predecessor"); *Bridges v. Mosaic Glob. Holdings, Inc.*, 23 So. 3d 305, 317 (La. Ct. App. 2008) ("[T]he successor corporation, who is able to derive benefits from the forum, should also be expected to answer for alleged liabilities of its predecessor in this forum.").

[25] If New York law does provide that an entity that assumes all of another entity's assets and liabilities may inherit the acquired entity's jurisdictional status, then we will determine whether, at the second step of the jurisdictional inquiry, exercising jurisdiction over SGBL comports with constitutional due process. Guided by the doctrine of constitutional avoidance, we reserve decision on that issue at this juncture. *See Licci II*, 673 F.3d at 61, 75.

Cir. 2011). We invite the Court of Appeals to expand upon or modify these questions as it deems appropriate, including by directing the parties to address other questions it finds relevant. *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 843 F.3d 120, 128 (2d Cir. 2016), *certified question accepted*, 28 N.Y.3d 1129 (2017), *and certified question answered*, 30 N.Y.3d 508 (2017).

## CONCLUSION

For the foregoing reasons, we certify the following questions to the New York Court of Appeals:

1.  Under New York law, does an entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?
2.  In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?

It is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this Opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the appeal once we have had the benefit of the views of the New York Court of Appeals or once that Court declines to accept certification.

## CERTIFICATE

We hereby certify the foregoing questions to the New York Court of Appeals pursuant to Second Circuit Local Rule 27.2 and New York Compilation of Codes, Rules, and Regulations, title 22, section 500.27(a).